## William Nash v. Reuben Skinner.

J., being about to purchase a quantity of wool of N , made his note payable to the order of N., and procured S. to put his name, in blank, upon the back of it, with the intent and for the purpose of enabling J. to purchase the wool of N. with the note. Held: that S. was liable to N. upon the note as an original promissor.

Held, also, that the declarations of S., made at the time he put his name upon the note, that he should only be holden as second indorser, not carried home to N., cannot have the effect to limit his liability.

Under the act of 1835, relating to parties in actions at law, it is no ground of variance if the proof does not show that all the defendants were parties to the contract.

The non-joinder of a joint promissor is only matter of abatement, and cannot avail, on trial, as matter of variance.

Assumpsit, on a promissory note.

The writ, in this case, was against "Reuben Skinner, "Henry Bulkley and Solomon Bulkley, and Henry L. Sabin, "the three last co-partners under the style and firm of H. & "S. Bulkley & Co., all of Granville, in the county of Wash- "ington, and State of New York." The writ was served upon the defendant, Skinner, and there was a *non est* return, as to the Bulkleys and Sabin.

The declaration commenced as follows:—

"In a plea of trespass on the case, for that whereas the "said defendants, heretofore, to wit, on the ninth day of "March, A. D. 1837, at Granville aforesaid, to wit, at Mid- "dlebury, made and signed their certain note, in writing,

" commonly called a promissory note, bearing date the day " and year last aforesaid, and thereby promised to pay the " said William, or order, one thousand dollars, at the Troy " City Bank, for value received, on the fifteenth day of July, " 1837, by reason whereof, the defendants became liable to " pay," &c., and the plaintiff averred that said note had not been paid.

There was a second count in the declaration, charging the defendant and Bulkley & Co. as guarantors of the payment of the note to the plaintiff.

Plea, *non assumpsit.* Issue to the country.

Upon the trial in the county court, the plaintiff offered in evidence a note of the following tenor :

" $1000. On the fifteenth day of July next, I promise to " pay to the order of William Nash, one thousand dollars, at " the Troy City Bank, value received.

" Granville, 9 March, 1837.     "GEO. D. JEWETT.

upon the back of which was the following indorsement :

" For value received we promise to pay the within note " agreeably to the tenor thereof.

REUBEN SKINNER,

H. & S. BULKLEY & Co."

The defendant objected to the introduction of the note, but admitted the signatures to be genuine. The objection was overruled by the court, and the note admitted.

It was admitted that the note was indorsed in blank, and filled up after it came into the hands of the plaintiff.

The plaintiff introduced George D. Jewett, the signer of the note, as a witness, who testified that the defendant and Bulkley, at the time when the note was signed by Jewett, put their names upon the back of said note ; that the note was made in Granville, in the State of New York, with the understanding between Skinner, H. Bulkley and the witness, that the note was made for the purpose of enabling the witness to purchase wool, in Vermont, of the plaintiff, and that it was passed by him to the plaintiff in payment of wool, on his own account ; that nothing was said between them how they would be holden.

The defendant then enquired of witness if it was not understood, at the time the note was executed, between the de-

fendant and Bulkley and the witness, that the defendant and
Bulkley indorsed the note as second indorsers. The wit-
ness said he did not recollect any such conversation. The
witness was further enquired of, by defendant's counsel, if
he had not told Mr. Agan and others, that the defendant and
Bulkley & Co. did indorse the note as indorsers, or second
indorsers, and that it was so understood by them and the
witness, at the time the note was executed.

Witness testified that he did not recollect having so stated
to Mr. Agan and others.

The defendant then offered Mr. Agan, as a witness, to im-
peach the testimony of Jewett, by proving that he had made
the aforesaid statement, which was objected to by plaintiff,
and rejected by the court.

The defendant called Henry Bulkley, as a witness, who
testified to the existence of the partnership of Bulkley &
Co., and that he signed said note with the co-partnership
name, without authority from his co-partners, and that he was
expressly forbid using the co-partnership name, as security
for any other person, in any case. This witness further tes-
tified that when Jewett called upon the witness, he wanted
the witness to indorse a note, signed by Jewett, and payable
to the order of the defendant and H. & S. Bulkley & Co.,
but that afterwards, at the request of Jewett, the witness
wrote the note payable to the plaintiff or his order, and that
thereupon the defendant said to the witness and Jewett, that
if they signed such a note, they would only stand as second
indorsers, and that Nash would not take it, as it would do
him no good, and that there would be no risk in signing such
a note, as Nash would stand as first indorser ; that the said
Jewett replied, it was such a note as he or Nash (which, he
could not say,) wanted. The note in question was then
signed. The plaintiff was not present at this conversation,
and no evidence was introduced to show that he had any
knowledge of it. The defendant's counsel requested the court
to charge the jury ;

1. That the defendant was not liable to the plaintiff in
this action, unless he understood, at the time of indors-
ing the note, that he indorsed it, understanding that he

ADDISON,
January,
1840.

Nash
v
Skinner.

was, and intended to be, a promissor upon the note to the plaintiff ;—

2. If the defendant intended to be accountable upon the note as second indorser, he could only be charged in the character of an indorser ;—

3. That Henry Bulkley could not use the partnership name of H. & S. Bulkley & Co., to charge the other partners, without their consent, unless it was in their usual course of partnership business.

But the court charged the jury that the facts testified to by Henry Bulkley, in relation to the understanding between him and the defendant and said Jewett, at the time of their signing and indorsing said note, in regard to the character of their liability, (the same not being carried home to the knowledge of the plaintiff,) were immaterial, though found by the jury to exist as testified to by him, and that upon the facts given in evidence, and testified to by the said Jewett, the plaintiff was entitled to recover the amount due on said note.

The jury returned a verdict for the plaintiff and the defendant excepted.

*E. N. Briggs and E. F. Hodges,* for defendant.

I. In an action against two or more persons on a promissory note, signed with a joint name or firm, if the declaration contains no averment that the defendants were partners or acted under the firm, but only that the defendants made the note by their own proper hands, proof that one of the defendants subscribed the note with the joint name or firm, is not sufficient to prove the contract as laid. *Pease* v. *Morgan,* 7 Johns. R. 468.

II. If any effect is to be given to the evidence of Jewett, the impeaching testimony offered by the defendant should have been admitted.

1. The enquiry was not collateral to the issue.

2. The witness was not, by the cross-examination, made the witness of the defendant.   1 Stark. Ev. 134.

III. This case is to be determined by the law of New-York, the contract having been made there.

The rule of construing contracts, according to the intent of the parties, will apply in this case, unless the law of New York has settled the construction of the present contract.

The law of Massachusetts, as applied to contracts like the

present, seems to be understood as establishing the doctrine that a person who puts his name upon the back of a note to which he is not a party, is held as an original promissor.

We think the cases do not go to that extent. *Josselyn* v. *Ames*, 3 Mass. 274. *Hunt* v. *Adams*, 5 Mass. 358. *White* v. *Howland*, 9 Mass. 314. *Moies* v. *Bird*, 11 Mass. 436.

The law in this state is the same as in Massachusetts. In the case of *Barrows* v. *Lane & Benham*, 5 Vt. R. 163, it is said that the mere name of a person upon blank paper, of itself, means nothing. It is evidence of no contract, and has no legal import. To give it any legal effect, evidence is necessary to show the purpose of its delivery and the intention of the parties.

We contend that a person who indorses a note, negotiable in its terms, and payable to another, is not liable as a promissor, unless it is proved that the indorser put his name to the note intending to become and contracting as a promissor, and that the *onus probandi* is upon the plaintiff, by the law of New York.

The case of *Herrick* v. *Carman*, 12 Johns. R. 159, has been repeatedly recognized as good law in that state. In that case it was proved that the maker of the note had given it to Carman & Co., the payees, with Herrick's name indorsed on it, in payment for goods sold by them to him, which they had refused to let him have without security, and the court say, we must intend that Herrick meant only to become the second indorser with all the rights incident to that situation, Herrick must have known that, though first to indorse, his indorsement would be nugatory unless preceded by that of the payees of the note.

In the case at bar, we offered to go further, and prove what the court implied in the case of *Herrick* v. *Carman*. See also Bailey on bills 47.

In *Tillman* v. *Wheeler*, 17 Johns. R. 326, Wheeler agreed to sell goods to Moore & Abby, on their giving a note with a good indorser. They afterwards brought him a note signed by them, payable to Wheeler, and indorsed, in blank, by Tillman. Wheeler then sold them the goods, entirely on the credit of Tillman. Wheeler sued Tillman as guarantor and

obtained a verdict in the court of common pleas. In the supreme court Yates, Justice, declared the opinion of the court, and says, " for aught that appears, Tillman may have put his name on the note as second indorser on the responsibility of the payee. This is the legal presumption from the appearance of the paper, without any proof or a special understanding on the part of Tillman."

The case of *Dean* v. *Hall*, 17 Wend. 218, sustains the cases of *Herrick* v. *Carman*, and *Wheeler* v. *Tillman*. See also *Bishop* v. *Hayward*, 4 Term. R. 470.

The case of *Nelson* v. *Dubois*, 13 Johns. 175, is cited as containing a different principle, but that was a case where the plaintiff failed to recover upon the count charging the defendant as promissor, but recovered upon the count upon the guaranty upon proof of consideration.

What is the proof in this case aside from the note? Jewett made his note in Granville, New York, payable to the order of William Nash. Defendant put his name, in blank, upon the back of the note, and, as Jewett says, the note was made for the purpose of enabling him to purchase wool of Nash. Not that defendant undertook to be responsible as promissor or guarantor.

We proved, on the part of the defendant, that he signed the note as indorser, which testimony the county court ruled immaterial, and that defendant was liable as promissor.

We believe it was incumbent on the plaintiff to prove that the undertaking of the defendant was an original undertaking to pay the note. And if parol testimony was admissible and necessary to make the defendant liable, the county court erred in their charge to the jury.

IV. Under the second count the plaintiff cannot recover.

1. The plaintiff was not authorized to fill up the indorsement, to charge the defendant as guarantor. The proof in the case does not admit it.

2. There is no consideration proved to support it.

3. The purchase was made on account of Jewett, and the defendant was not privy to the consideration. *Nelson* v. *Dubois*, 13 Johns. R. 175. *Ulen* v. *Kittredge*, 7 Mass. R. 233. *Tillman* v. *Wheeler*, 17 Johns. R. 326.

*Starr & Bushnell*, for plaintiff.

1. The defendant indorsed the note at the time when it was made, with full knowledge of the use to be made of it, viz : to obtain the plaintiff's wool, which was subsequently received by Jewett, in exchange for the note. The indorsement was made for the purpose of giving Jewett credit with the plaintiff. Under these circumstances, the defendant became a joint promissor with Jewett. *Barrows* v. *Lane & Benham*, 5 Vt. R. 161. *Knapp* v. *Parker*, 6 Vt. R. 642. *Flint* v. *Day*, 9 Vt. R. 345. *Nelson* v. *Dubois*, 13 Johns. R. 175. *Campbell* v. *Butler*, 14 Johns. R. 349. *Hunt* v. *Adams*, 5 Mass. R. 360. *White* v. *Howland*, 9 Mass. R. 314. *Baker* v. *Briggs*, 8 Pickering, 122.

2. The indorsement of the defendant's name on the note, was in pursuance of a previous agreement with Jewett " to assist him in the purchase of wool, by lending him his name as surety." The term, surety, as applied to notes and bills, has a definite legal meaning, viz ; as indorser of a negotiable security in the common form of negotiating such paper, or as a joint promissor with the principal, and such is to be taken to have been the intention of the defendant when he agreed to lend to Jewett his name as surety.

3. The indorsement, in blank, of a negotiable security, authorizes the holder to fill up the contract in any way most beneficial to himself, not inconsistent with the nature of the transaction, if no condition or limitation is attached to the contract at the time of the indorsement. *Russell* v. *Langstaffe*, Doug. R. 514. *Lickbarrow* v. *Mason*, 6 East's R. 21. *Violet* v. *Patton*, 5 Cranch's R. 150.

4. The note in question, though made in the state of New York, was to be delivered to the plaintiff in New Haven, in this state, upon a contract to be there executed. It took effect as a promissory note, only upon the completion of the contract, and stands upon the same ground as if it had been executed in New Haven. The place of delivery of a negotiable security, and of the execution of the contract which is the consideration of such security, is to be taken as the place of execution of such security, though it may bear date at a different place.

The place of making, indicated in the bill, is no part of the

Addison,
January,
1840.

Nash
v
Skinner

contract, and the real place may be shown. Chitty on Bills, 52. Story's Conflict of Laws, 265.

5. If there be doubt in relation to the construction of the contract, the *lex fori* must govern the construction. The question in this case respects merely the form of the remedy against the defendant. He is, unquestionably, by the law of New York, holden either as a joint promissor or guarantor. *Nelson* v. *Dubois*, 13 Johns. R. 175. *Campbell* v. *Butler*, 14 Johns. R. 349.

6. The reason why the *lex loci* is permitted to prevail, is, because the law supposes the parties made the contract in reference to the law of the place where made. Hence, when it appears that the parties, at the time of entering into the contract, had the law of another place in view, the reason failing, the rule fails. As if a note were made in New York, payable to one of our banks and offered and discounted here, it would be evident that the parties did not have the laws of New York in view in making the contract. Story's Conflict of Laws, 272.

7. There is no variance between the contract stated in the declaration, and that offered in evidence. The defendant should have pleaded in abatement, that there was another joint contractor, if he would avail himself of that exception. He cannot avail himself of that exception under the general issue. Chit. Plead. 442. Gould's Plead. 278, sec. 114. 1 Saund. R. 291. b.

8. There was a good consideration for the contract of the defendant. He indorsed the note at the time it was signed by Jewett, for the purpose of enabling Jewett to get credit with the plaintiff. The credit given to Jewett by plaintiff, on the faith of the defendant's indorsement, was a good consideration for the contract. 3 Kent's Com. 122.

9. The conversation, (testified to by H. Bulkley) at the time of the execution of the note, between Jewett, the defendant and Bulkley, does not affect the liability of the defendant on his indorsement of the note, the knowledge of that conversation not being brought home to the plaintiff. The declaration of the defendant, *at that time*, was no more than the expression of his opinion upon *the legal effect of his indorsement of the note*, and was not intended to limit or narrow the obligation assumed by his indorsement.

The opinion of the court was delivered by

BENNETT, J.—The important enquiry in this case, is, as to the right of the plaintiff to recover upon the facts detailed in the bill of exceptions. It seems the note was signed by Jewett,and indorsed, in blank,by Skinner and Bulkley & Co., in New Yo:k,∗for the purpose for enabling Jewett to pass it to the plaintiff in payment for wool, which he was about to purchase of him, and that Skinner, as well as Bulkley & Co., well understood, at the time the note was indorsed, the use to which it was to be appropriated, and it was accordingly passed to ‹the plaintiff in payment for wool purchased of him by Jewett.

It has¿been decided, in this state, and may be regarded as settled law, that when a person, not a party to a note, signs his name upon the back, without any words to express the nature of his undertaking, he is considered as a joint promissor with the other signers. *Barrows* v. *Lane & Benham*, 5 Vt. R. 161. *Knapp* v. *Parker*, 6 Vt. R. 642. *Flint* v. *Day*, 9 Vt. R. 347. This is also the settled law of Massachusetts, and in the case of *Hunt* v. *Adams*, 6 Mass. R. 519, and in *Moies* v. *Bird*, 11 Mass. R. 436, it was held that, upon the indorsement alone, the indorser was, *prima facie*, and without any proof to explain it, to be treated as a joint promissor. It is said, however, in argument, that this contract is to be governed by the laws of New York, and that by the decisions of the courts of that state, the plaintiff is not entitled to retain his verdict. We will examine, for a moment, the New York cases. In the case of *Herrick* v. *Carman*, 12 Johns. R. 159, in error, it did not appear that the plaintiff in error indorsed the note for the purpose of giving the maker of the note a credit with the payees of it, or that he was, at the the time he indorsed the note, in any way advised of the use to which the maker intended to apply it. The court say, in the absence of any proof to the contrary, we must intend that Herrick meant only to become the second indorser, with all the rights incident to that situation, and that the fact of his indorsing first, in point of time, could have no influence, as he must have known, and we are to presume he acted on that knowledge, that though first to indorse, yet his indorsement would be nugatory, unless

preceded by that of the payee of the note. The case of *Tillman* v. *Wheeler*, 17 Johns. R. 326, is decided upon the same principle. The legal presumption, it is said, is, in the absence of any explanatory proof, that the persons who put their names upon the back of a note, do it for the accommodation of the payees, and are to stand as second indorsers. This, it is true, is a different inference from what the courts of Massachusetts would have made, and, perhaps, of this state. In the cases decided by our courts, it distinctly appears that the persons. indorsing the notes, were fully apprized of the uses to which the notes were to be applied.

In the case of *Nelson* v. *Dubois*, 13 Johns. R. 175, it appeared the defendant put his name on the back of the note to give the maker credit with the plaintiff, and that the plaintiff parted with his property, relying upon the indorsement. In that case the court recognize the case of *Hunt* v. *Adams*, 5 Mass. R. 358, and *White* v. *Howland*, 9 Mass. R. 314, as sound law, and it was held that Dubois was liable, as upon an original undertaking, as surety, and as much so as if he had signed the body of the note. The case of *White* v. *Howland*, is very similar to the one before the court. In that case one Taber gave a note to the plaintiff, payable on demand. It appeared the amount of the note was loaned to Taber, upon his agreeing to give his note with two indorsers, and that the note was given with that intent, payable to White, and indorsed by one Coggeshall and the defendant. The court held that the plaintiff was entitled to recover, and that the effect of the defendant's signature was the same as if he had subscribed the note upon the face of it, as surety, and that he was answerable as an original promissor with Taber. So in the case of *Campbell* v. *Butler*, 14 Johns. R. 349, where A. had agreed to become surety for B., upon the purchase of goods from C., and B. made a note to C. for the amount, payable to his order, on which A. indorsed his name, in blank, it was held, upon the authority of *Nelson* v. *Dubois*, that C. might fill up the blank with an express agreement to pay the note, and that A. was liable as an original promissor. The defendant, when he indorsed this note, understood it was to be passed to Nash, and it was indorsed with this intent, and to give the maker, Jewett, a credit with

the plaintiff, and not to enable him to put the note in circulation. The presumption, then, that this note was indorsed for the accommodation of Nash, and that Skinner was to stand as second indorser, is effectually rebutted, and the case falls directly within the principle of the case of *Nelson* v. *Dubois*, and of *Campbell* v. *Butler*. In this case the signatures of all the promissors were made at·the same time, and before the note was delivered to Nash, and the consideration, to bind the surety, is apparent from the case, it being the credit given to the principal, by the promissee of the note for the value received of him. The defendant could not be made liable as indorser, simply, so long as the paper remained in the hands of the promissee, and it is evident that he did not indorse it with the expectation of aiding Nash in putting the note in circulation. The well settled principles of law, as well as common justice, require that he should be holden as an original promissor.

The declaration of the defendant, Skinner, to Bulkley and Jewett, at the time the note was made, "that if they signed such a note, they should stand only as second indorsers, and that Nash would not take it, as it would do him no good," can have no effect to limit the liability of the defendant. It was evidently no more than the expression of a legal opinion of the effect of the blank indorsement of such a note. It was not intended to limit the obligation. Besides, this conversation was not carried home to Nash. Jewett can no more be regarded as the agent of Nash, than Bulkley, and when this note was made and indorsed for the express purpose of being passed to Nash, in payment for wool, which Jewett was to purchase of him, the rights of the plaintiff cannot be prejudiced by any private conversation or understanding between the maker and indorsers, not carried home to the knowledge of the plaintiff. Such testimony was wholly immaterial, as to the merits of this action, and, consequently, it is no good ground why this court should grant a new trial, though the court below refused to admit testimony to show that the witness, Jewett, had given a different relation, in this particular, from that which he gave upon the stand.

It is said, in the argument, that there is a variance between

Nash
v.
Skinner.

the declaration and the proof, but this objection is without foundation. In the case of *Pease* v. *Morgan*, 7 Johns. R. 468, cited by the defendant's counsel, it was indeed held that where the plaintiff declared that the defendants made the note, " *their own proper hands and names being thereto subscribed,*" and the proof being that the note was signed in the name of the firm, by one of the defendants, there was a variance. The declaration, in that case, did not allege that the defendants were partners, or acted under the name of the firm by which the note was signed. In this case the three persons composing the firm of H. & S. Bulkley & Co., are set up, in the writ, as co-partners, under the aforesaid firm, and it is averred, in the declaration, that the defendants *made and signed their certain note, &c.,* not adding that it was subscribed *by the proper hands and names of the defendants.* It is always sufficient to declare upon a written instrument according to its legal effect, and if the evidence supports the allegations, it is all that is required. It cannot be objected, as a ground of variance, that Jewett should also have been joined in the suit as a joint contractor. In an action of assumpsit the non-joinder of a joint promissor, is only matter of abatement, and cannot avail the party under the general issue.

It is also said, that inasmuch as the declaration issued in this case against Skinner and H. & S. Bulkley & Co., the plaintiff, to support his declaration, is bound to prove a joint contract made by them all, though a *non est inventus* has been returned as to the Bulkleys and Sabin. It is not, however, under our statute of 1835, material to decide whether the firm of H. & S. Bulkley & Co. were bound by the signature of Henry Bulkley or not.

Our statute provides, that, when any of the defendants are not a party to the contract, the plaintiff may recover against the other defendants, who are shown to have made the contract. The judgment of the county court is affirmed.