### FOR THE

## COUNTY OF BENNINGTON.

### FEBRUARY TERM, 1845.

---

PRESENT.

Hon. CHARLES K. WILLIAMS, Chief Judge.
Hon. STEPHEN ROYCE, } Assistant Judges.
Hon. MILO L. BENNETT, }

---

## GAY R. SANFORD *v.* LUMAN NORTON.

[Same Case, 14 Vt. 228.]

The case of *Sanford* v. *Norton*, 14 Vt. 228, so far as it decides in reference to the liability of one, not party to a note, who indorses it in blank, commented upon and examined by WILLIAMS, Ch. J.

Where, at the time a note was indorsed, the maker of the note was engaged in business in this state, and lived in a house with his son and daughter, his daughter being his housekeeper, and, before the note became due, went into another state, leaving his son and daughter living in the same house, his son being his agent in the transaction of his business in this state, it was held that a demand of payment of the note, made, on the day it became due,—which was about nine months after the maker of the note left the state,—at the house previously occupied by him, and which was then

occupied by the son and daughter, was sufficient to charge the indorser, it not appearing that the maker had ever abandoned the idea of returning to his said residence, although it did appear, that, at the time the demand was made, he had an actual residence in another state.

ASSUMPSIT upon a promissory note in these words; "Bennington, Dec. 29, 1838; On the first day of April, one thousand eight hundred and forty, for value received I promise to pay Uriah Edgerton, or bearer, one thousand and fifty six dollars;" (Signed) "URIAH SAYLES;"—on the back of which note there had been in written, in blank, the names of the defendant and of Samuel C. Raymond. The declaration contained a count against the defendant as *indorser* of the notes, and also counts against him as maker of the same note, and the common counts. Plea, the general issue, and trial by the jury.

On a former trial of this case the blank over the names of the defendant and Raymond had been filled up, in court, by the plaintiff's attorney, with the following words;—" For value received we jointly and severally promise to pay the money within mentioned to the said Uriah Edgerton, or bearer."

The plaintiff introduced parol evidence tending to prove, that, sometime in February, 1839, the note was transferred by Edgerton, the payee, to the defendant, and became his property,—at which time the defendant's name was not upon it; that afterwards, and before the note became due, it was transferred, by indorsement of the defendant, to Samuel C. Raymond; and that subsequently, and before it became due, it was transferred by Raymond, for a valuable consideration, to the plaintiff. Also, that, on the first day of April, 1840, the note was placed in the hands of a notary public, who, on that day, made demand of payment of a daughter of Caleb Sayles, the maker, at a house in Bennington, she being the only person in the house, but that no payment was made; that the note was then protested for non-payment; that on the same day the said notary left a written notice of such demand and protest at the dwelling house of the defendant, in Bennington, he being absent from home, but which was received by him the same day; and that on the same day the notary deposited in the post office, in

Bennington, a written notice of such protest, directed to said Sayles, Wrentham, Massachusetts.

The plaintiff also gave evidence tending to prove that the note declared upon was executed by said Sayles in Bennington, at the time it bore date, he then residing in Wrentham, Massachusetts, and was given for real estate, including a building for manufacturing cotton, in Bennington; that, in the spring of 1839, the said Sayles, with a son and daughter, came to Bennington, and brought some furniture, and took possession of the property so purchased, and commenced preparing said factory building for operation, under the firm of Caleb Sayles & Co.; that his daughter acted as housekeeper for him and his son, in the house where the demand of payment was made of her, as above mentioned; that said Caleb Sayles remained there until sometime in July following, when he returned to Wrentham, where he has ever since continued to reside; that the wife of Caleb Sayles had never removed to Bennington; and that his son was his agent, and a partner in the transaction of business at Bennington, and resided with his sister at the house where the demand was made, but was, on the day of the demand, absent from home.

The defendant's counsel requested the court to instruct the jury that the facts, attempted to be proved, as above detailed, were insufficient to entitle the plaintiff to recover. But the court instructed the jury, that the evidence, if believed, was sufficient to entitle the plaintiff to recover against the defendant, as indorser of the note; that, the note having been executed at Bennington, for property so purchased there, it was to be presumed the parties understood that there was to be the place of payment; that it was not necessary for the plaintiff to show that Sayles had moved his family to Bennington, and taken up his permanent residence there, but that it was sufficient for him to prove that business, in which he was concerned, was carried on there by his partner, as agent for carrying it on; and that a demand at the residence of his said partner, or agent, being the place where Sayles had resided, while he was in Bennington, and where his business had been, and was, at the time of giving the note, expected to be carried on, was a sufficient demand of pay-

Sanford *v.* Norton.

ment of the note, although the residence of said Sayles was then known to be at said Wrentham.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*Hall & Lyman* for defendant.

1. It is contended that the county court ·erred, in deciding that the defendant, from the testimony, was liable as an indorser, while the contract, as it then rested between the parties, would make him liable, if liable at all, as the signer of a joint and several promissory note. This contract it is true was attached to a blank indorsement; but the case finds that it was put there by the plaintiff, or his counsel, on a former trial of this suit; and while the contract remained upon the note, no evidence should make him liable as a common indorser,—which is only a conditional undertaking. *Smith* v. *Frye*, 14 Maine, 457.

2. It is contended, that the note in question should have been first indorsed by Uriah Edgerton, the payee, to make the subsequent indorsements negotiable. *Sandford* v. *Norton*, 14 Vt. 228.

3. But if the court shall be of opinion that the defendant is accountable to the plaintiff as a common indorser, with the contract as it is attached to the note, we have a farther objection to the right of recovery.

We believe it to be a principle of law, settled beyond controversy, that the contract between an indorser and an indorsee is a conditional contract. It is upon condition that the note is duly presented, payment demanded and refused, and the earliest reasonable notice of its dishonor given to the indorser, that he becomes accountable for the debt. *Heylins* v. *Adamson*, 2 Burr. 676.

It is admitted, in this case, that the residence of the maker, when he executed the note, was at Wrentham, Mass., where he resided when the note fell due, and that such fact was known to the parties. The date of the note indicates when the contract was executed, but it is not evidence of the residence of the maker, nor does it fix the place of payment. *Fisher* v. *Evans*, 5 Binn. 541. *Barnwell et al.* v. *Mitchell*, 3 Conn. 101. *Freeman* v. *Boynton*, 7 Mass. 483.

Sanford v. Norton.

*Duncan* v. *Mc Cullough*, 4 S. & R. 48. *Spencer* v. *Bank of Sulna*, 3 Hill 520. Bayl. on Bills 209. *Gilpin* v. *Hard*, 3 Mc Cord, 394. *Anderson* v. *Drake*, 14 Johns. 114. *Lowery* v. *Scott*, 24 Wend. 358. The parties not having fixed the place of payment in the note, it was left subject to general rules; and payment should have been demanded of the maker in person, or at his residence, if either could be found with reasonable diligence. The court, in their instructions to the jury, say. " The note being executed at Bennington, for property so purchased there, it was to be presumed that the parties intended that there was to be the place of payment." This instruction was manifestly wrong, as none of the parties to the note were on trial; and any understanding between them, not made a part of the note, should not affect the rights of the indorser and indorsee, who are strangers to that part of the contract.

4. We deny that Caleb Sayles ever had any such place of business at Bennington, as would warrant a demand for payment of his individual paper at that place. In order to constitute such a place of business, it should be one that would require the personal attendance of the maker; and it is upon the presumption that the maker will be more likely, or as likely, to be found there, as at his residence, that the place of business is recognized as the proper place for demand of payment. Bayley on Bills 200. It must be a place of business in the occupation of the party, and not where he occasionally visits. *Bank of Columbia* v. *Lawrence*, 1 Peters 582. *Bank of the United States* v. *Cochran*, 2 Peters 121.

5. A demand upon the general agent of the maker in all his business is not good. Bayley on Bills 210.

6. We insist that the county court erred in directing that the location of the property, for which the note was given, was proper evidence to fix the place of payment, and most especially as between these parties, who were strangers to the original contract.

7. It forms no excuse for not presenting the note, that the maker resided in Massachusetts when the note fell due; for that was the same place at which he resided, when the note was executed. *Mc Gruder* v. *Bank of Washington*, 9 Wheat. 598.

37

*W. M. Robinson* for plaintiff.

As a general rule, demand of the maker of the note, at his residence, is essential to charge the indorser ;—but this is dispensed with in many cases. *State Bank* v. *Hurd,* 12 Mass. 172. Chit. on Bills 399, note. *Herring* v. *Sanger,* 3 Johns. Cas. 71. *Thompson* v. *Ketcham,* 4 Johns. 285. *Howe* v. *Bowes,* 16 East 112. *Whitwell et al.* v. *Johnson,* 17 Mass. 449. If the maker of the note has absconded, or gone out of the country, the want of a demand will be excused. Chit. on Bills 385, 404. Ld. Raym. 743. *Putnam et al.* v. *Sullivan et al.,* 4 Mass. 45. *Leffingwell* v. *White,* 1 Johns. Cas. 99. *Widgery* v. *Munroe,* 6 Mass. 449. Every question, as to the diligence of the holder in making demand sufficient to charge the indorser, is to be decided according to the facts of the particular case. 3 Kent 91, 96. *Boot* v. *Franklin,* 3 Johns. 209. 3 Conn. 497. 14 Johns. 114.

It is a presumption of law, that the maker resides at the place where the note is dated, and that he contemplates payment at that place. *Stewart* v. *Eden,* 2 Caine 121. *Hepburn* v. *Toledano,* 10 Martin's, (Louis.) Rep. 1 Johns. 296. 20 Johns. 172. 3 Kent 96. Chit. on Bills 307.

If the maker remove from the State, he need not be pursued by the holder in the State to which he has removed. *Anderson* v. *Drake,* 14 Johns. 114. *Cromwell* v. *Hynson,* 2 Esp. R. 511. *McGruder* v. *Bank of Washington,* 9 Wheat. 598. 2 Taunt. 206. *Gillespie* v. *McHannahan,* 4 McCord 503. *Central Bank* v. *Allen,* 16 Maine 41. 1 Cowen's Treatise 195, 196. Chit. on Bills 401, note (2.) Ib. 14, note. Bayley on Bills 198. 3 Kent. 96. 2 Phil. Ev. 24, note 87. Anth. N. P. 1, notes.

A demand at the house, or place of business, of the maker, though shut up, is sufficient ;—or of his wife. 4 B. & Adol. 127. 8 Mass. 260. 1 Pick. 413. 6 Mass. 389.

We insist that the court were right in their instructions, and that the jury were right in their finding the facts, as it appears they did find them. When Norton received the note of Edgerton, Sayles was in Bennington ; when Norton transferred the note to Raymond, there is nothing in the case which shows that he was not still in Bennington. All the parties to the note, except Sayles, re-

Sanford *v.* Norton.

sided at Bennington; Sayles was at Bennington while the note was transferred twice, at least. The note was dated at Bennington; it was given in part payment of a large amount of factory property, which was to be carried on in Bennington by Sayles. Now where did the parties expect that Sayles would do the business appertaining to the factory, and pay his notes,—at Bennington, or in the State of Massachusetts?

In whatever place a person has a domicil, or place of business, where he keeps his papers, a demand on him there, as maker of a note, or notice to him as indorser, is sufficient, although he have no fixed residence there, or legal settlement, or right to vote. *Peirce et al* v. *Pendar*, 5 Metc. 352.

A person, indorsing his name in blank on the back of a note, is supposed to enter into some contract respecting the note. If the note is payable to bearer, or to A. B. or order, he is liable as indorser, and in no other form. *Dean* v. *Hall*, 17 Wend. 214. *Hall* v. *Newcomb*, 3 Hill 233. If the note is payable to A. B. or order, A. B. not having indorsed it, to give it currency, the indorser in blank will be liable as joint maker, or guarantor, according to the contract at the time of indorsing. The following cases were all cases of notes payable to the payee, or order, viz. *Nash* v. *Skinner*, 12 Vt. 219; *Sumner* v. *Gay*, 4 Pick. 311; *Herrick* v. *Carman*, 12 Johns. 159; *Tillman* v. *Wheeler*, 17 Ib. 326; *Palmer* v. *Grant*, 4 Conn. 389; *Beckwith* v. *Angell*, 6 Ib. 315; *Wylie* v. *Lewis*, 7 Ib. 301; *Ulen* v. *Kittredge*, 7 Mass. 233; *White* v. *Howland*, 9 Ib. 314; *Moies* v. *Bird*, 11 Ib. 436. It is believed that no case can be found, where the indorser in blank of a note, payable to A. B. or bearer, has been held as joint maker, or guarantor. The payee of such a note is a mere cypher; every person indorsing such a note makes a new party. *Dean* v. *Hall*, 17 Wend. 214. Bayl. on Bills 26. Chit. on Bills 181. 4 Mass. 458, 462. 3 Burr. 1526. 13 Vt. 248.

The opinion of the court was delivered by

WILLIAMS, CH. J. This case was before this court in February, 1842. I was not present at that time. The judgment, which was then reversed, had been made at the county court, when I presided,

Sanford *v.* Norton.

and, as the views which I then entertained have some influence on
me in the decision which the court have at this time made, it may
be proper to state them, without any disposition to go abreast of the
judgment of this court, reversing the former decision of the county
court.

The note was originally made by Caleb Sayles, payable to Uriah
Edgerton, or bearer. Edgerton's name was not on the note, but
the names of Norton, the defendant, and Raymond. Under these
circumstances I considered that the plaintiff might recover against
the defendant, as maker, and that, as no evidence was given to
show that there was any fraud, or force, in obtaining the note from
the maker, or holder, it appeared to me that the plaintiff was not
called on to prove that he gave a consideration for the note, or that
it was indorsed to him while current; and, until this was done, the
defendant was not at liberty to contest with the plaintiff his liability
on the note, or to change the *prima facie* character of the transac-
tion by any evidence of what transpired between him and Ray-
mond, the knowledge of which was not carried home to the plain-
tiff. Both of these positions were established by this court in the
case of *Flint* v. *Day*, 9 Vt. 345, and in *Nash* v. *Skinner*, 12 Vt.
219. In the former case declarations, made by Day at the time he
signed the note on the back, were not allowed to change the char-
acter he assumed, as it respected a person to whom they were not
known. In the latter, all the cases, both in this State, in Massa-
chusetts, and in New York, were elaborately considered by the
counsel, and the judge, who delivered the opinion of the court, lays
it down as settled law in this State, established by decisions, " that
when a person, not a party to a note, signs his name upon the back,
without any words to express the nature of his undertaking, he is
considered as a joint promissor with the other signers;" and the
court farther decided that any conversation, to the effect that the de-
fendant was to stand as an indorser, and not as a maker, could not
prejudice the payee in that note, not carried home to his knowl-
edge; and surely, if they could not prejudice the payee of the note,
they ought not to affect an indorsee. The case of *Strong* v. *Riker*,
16 Vt. 554, is to the same effect.

That this principle, of considering that a person, not a party, who

Sanford *v.* Norton.

indorses a note, is to be considered as maker, is not confined to notes not negotiable, we find in the cases before mentioned, both of which were on negotiable notes, and also in the cases of *Ulen* v. *Kittredge,* 7 Mass. 233; *Moore* v. *Bird,* 11 Ib. 436; *Nelson* v. *Du-bois,* 13 Johns. 175; and in the case of *Dean* v. *Hull,* 17 Wend. 214, it was considered, that, when a person is privy to the consid-eration, and indorses a note, though negotiable, if not negotiated, he may be charged directly as maker. I think, therefore, that, in this State, it has been established, and is now, unless it is consid-ered as changed by the determination made in this case when for-merly before the court, that the defendant was liable as joint prin-cipal, and, though it may be admitted, that, as between the parties to the contract, this relation may be varied by parol proof, yet as to others, having no knowledge, the apparent engagement and obliga-tion must be considered as the real one.

The parol proof, which was offered on the former trial, of the re-ceipt of Raymond, and the other facts, it appears to me would not have been admissible, unless upon the principle that the plaintiff, on its admission, would have been obliged to show that he paid a consideration, and took the note while current. To require this would entirely contravene the policy of the legislature, when they repealed the former law, subjecting negotiable notes to certain in-firmities, and adopted the common law, or the law merchant, in re-lation to commercial and negotiable paper. Whatever I might have thought of the policy of this action of the legislature, I feel bound to give effect to their enactments, and, whatever I find the law to be, so to declare it; and if I find a decision, which I might consider as more congenial to my views of what the law ought to be, yet, if it is not the law, I do not feel at liberty to adopt it,—which would be, in effect, to make, and not declare, the law.

The case of *Heath* v. *Sansom,* 2 B. & Adol. 291, decided that when, from the defect of consideration, the original payees cannot recover on a note, or bill, the indorsee, to maintain the action against the maker, as acceptor, must prove a consideration given by himself, or by a prior indorsee, though he may have had no notice that such proof would be called for. This decision was made by a majority of the court, Parke, J., dissenting. This decision stands

solitary and alone, and we learn in a subsequent case, by the remarks of Patterson, J., who was one of the judges who concurred in the decision, that it lead to a consideration of the subject by the court, the result of which has been a decision adverse to the majority of the judges in that case, and in conformity to the views of Parke, J., who dissented. In a note to Chitty on Bills, 56, the opinion of Parke, J., is considered as conformable to the law ; and it is stated, that, in the London Law Magazine, the decision in that case, is considered as unfounded in principle and opposed to authority. The cases of *French* v. *Archer*, 2 D. & R. 130; *Stern* v. *Yglesias*, Ib. 252; *Low* v. *Clifford*, 5 M. & Scott 95 ; *Brand* v. *Roberts*, 1 Bingh. N. S. 465 ; *Whittaker* v. *Edmunds*, 1 M. & Rob. 365, and the opinion of the chancellor of New York, in *Morton* v. *Rogers*, 14 Wend. 582, may all be considered as disregarding and overruling the case of *Heath* v. *Sansom*.

The case of *Sturtevant* v. *Lord*, 43 E. C. L., 61, and the case of *Arbouin* v. *Anderson*, 41 E. C. L. 642, seem to settle the doctrine, as now prevailing in England, that the owner of a bill, or note, is entitled to recover upon it, if he come by it honestly, that that fact is implied, *prima facie*, by possession, that, to resist the inference so raised, fraud, felony, or some such matter, must be proved, and that it is not sufficient to show a want of consideration. The case of *Charles* v. *Marsden*, 1 Taunt. 224, is recognized and re-established. The same position, which now prevails in England, is recognized by the Supreme Court of the United States in *Swift* v. *Tyson*, 1 Pet. 1. I feel warranted, therefore, in saying, that, if the doctrine of the case of *Heath* v. *Sansom* is established by the decision to which I have adverted, I regret it, because I think it is not recognized as law any where else. I cannot see, that, in the case of *Bassett* v. *Dodgin*, 25 E. C. L. 21, any confirmation of the case of *Heath* v. *Sansom* is given, or that it was spoken of with approbation, or disapprobation ; but, so far as the decision was had in this latter case, it was rather in opposition to, than in approbation of, that case.

On the trial of this case at the last county court, the testimony, which was rejected at the former trial, was admitted; and I am to suppose that it established the fact, that the defendant was not a

Sanford *v.* Norton.

maker, or guarantor, but an indorser. For I cannot suppose, that, when a man, not a party, indorses a note, he is to be considered *prima facie* a joint maker, according to our previous decisions, and *prima facie* an indorser, as now established. Without in any way impugning the decision made in this case, when it was formerly reported, and taking it for granted that the testimony, which had been offered, should have been admitted, and on the facts now in the case, I think the plaintiff entitled to recover on the whole case, as presented. To this plaintiff the defendant was apparently a joint promissor. The plaintiff received the note for a valuable consideration, it was indorsed and delivered to him before it was due, and as to him it was not open to the inquiry when the defendant's name was on the note ; he had no notice of the transactions between the defendant and Raymond, and there is no defence to the note, and the plaintiff has received the note while current, and paid a consideration therefor.

This was not the ground on which the case was put at the last trial in the county court, but the defendant was treated as an indorser ; and on this ground we are of opinion the defendant was rightly charged; and although I do not feel very clear and decided in this view, I yet acquiesce and agree with my brethren, that, if the defendant is to be considered as an indorser, on the facts which appeared before the court, he was liable as such. In this aspect of the case, Sayles was the maker of the note, and it was incumbent on the plaintiff to present the note to him, when it became payable, and, on his neglect to pay, to give due notice to the defendant. The question is, whether the note was so presented for payment as to charge the indorser ; for if it was, there is no doubt but that the defendant was duly notified.

The charge of the court was, that the evidence, if believed, was sufficient to entitle the plaintiff to recover; and in this opinion we coincide with the court below, without deciding whether all the views expressed in the charge were correct, or not. At the time the note was executed, Sayles, the maker, resided in Wrentham, Massachusetts ; but in the spring of the year, when this note was indorsed to the plaintiff, or about that time, Sayles had commenced a residence in Bennington ; he began to keep house with his son

and daughter, and his daughter was his housekeeper, and he remained there personally until the July following; and the daughter and son continued to keep house there, the son acting as the agent of Sayles, at the time when the note fell due, and when the demand was made. It is not found that this residence was ever abandoned by Sayles, the maker, or that he gave up the idea of returning to his house here, and attending personally to his concerns; but the contrary is to be inferred from the facts in the case. It was therefore a question, not susceptible of being made perfectly clear, where was, in point of fact, the actual residence of Sayles. While he resided in Bennington, keeping house, that was his residence, notwithstanding the other part of his family had not removed there; and although a personal demand on the maker, any where, would have been sufficient to charge the indorser, we are of opinion that the demand in this case was equally sufficient, within the spirit of the cases read at the bar by the plaintiff's counsel. The case from the 10th Martin's Rep. is very much in point.

The judgment of the county court is therefore affirmed.