CODDINGTON (HATCH v.). See Case No. 6,205.

CODMAN (ROBISON v.). See Case No. 11,970.

## Case No. 2,935.

CODMAN et al. v. VERMONT & C. R. CO.

[16 Blatchf. 165.][1]

Circuit Court, D. Vermont. April 15, 1879.

GUARANTY—NEGOTIABILITY—FIXATION OF LIABILITY—INTEREST.

1. The trustees and managers of the Vermont Central Railroad Company and the Vermont and Canada Railroad Company issued notes, to the amount of $1,000,000, in sums of $1,000 each, by which they, as trustees and managers only, reciting that it was in accordance with the votes of the stockholders of the two companies, and by virtue of a decree of the court of chancery of the state of Vermont and of a special act of the legislature of Vermont, promised to pay to the order of the defendant the sum, 20 years from date, with interest at the rate of 8 per cent. per annum payable semi-annually, at their office in Boston, on presentation of the interest coupons attached. The notes were signed by the trustees and managers, as such, and interest coupons. payable to bearer, for each instalment of interest, were attached. On each note was this endorsement, signed by 1 e treasurer of the defendant. under its seal: "For value received, the Vermont and Canada Railroad Company hereby guarantee the payment of the within note, principal and interest, according to its tenor, and order the contents

thereof to be paid to the bearer." The notes were put on the market. and C. purchased 50 of them at par and ⅛, without notice in regard to them, beyond the general knowledge, open to all, of the location and situation of the railroads, and what appeared upon. and would be suggested by, the face of the instrument. C. sued the defendant to recover the amount of 2 coupons on each of the 50 bonds. The defendant admitted the "demand, notices and protest of said coupons, as they fell due." Held: The defendant became liable upon the notes, as guarantor, to any one to whom the guaranty would run and who would be entitled to sue upon it.

2. Whether the guaranty was negotiable, quaere.

3. The endorsement was a contract of endorsement, running to the bearer.

4. The admission as to demand, notices and protest, is sufficient to show that the liability of the defendant as endorser became fixed.

5. Interest at the rate of 7 per cent. per annum, and no more, can be recovered on the notes, with interest at that rate, on such interest, as damages, from the time when payment should have been made.

[At law. Action by Robert Codman and Henry A. Johnson against the Vermont & Canada Railroad Company.]

Plaintiffs, pro se, and William G. Shaw, and Benjamin F. Fifield with them.

Francis A. Brooks and Edward J. Phelps, for defendants.

WHEELER, District Judge. This is an action of assumpsit against the defendant, as guarantor and endorser of fifty negotiable bonds, of one thousand dollars each, to recover arrears of interest thereon, and has been tried by the court upon stipulation of the parties waiving a jury, filed. The defendant leased its road, before it was built, to the Vermont Central Railroad Company, reserving semi-annual rent equal to eight per cent. annual interest on its cost, and, to secure payment, took a stipulation for re-entry and a conveyance of the Vermont Central Railroad, to be operative on default, giving a right "to receive all tolls. fares and other lawful income receivable for the use of the said railroads," and. after paying expenses, to "apply the residue of its said receipts in and towards the payment of all rent then in arrear and unpaid." The Vermont Central Railroad Company also mortgaged its road by two successive mortgages, subject to the security for the Vermont and Canada rent. Default was made of the mortgaged debts, and also of the rent, and the roads were surrendered to the mortgage trustees. The Vermont and Canada Company brought a bill in equity, in the court of chancery of the state, to enforce its security for the payment of its rent, and the roads were by that court placed in the hands of receivers. Much question was made, in that proceeding, as to the effect and validity of the lease and conveyance to secure rent. but they were finally held valid and operative. by the supreme court of the state. on appeal, and the amount of the annual

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

rent was fixed, but it was not decided that the possession of the roads should go to the Vermont and Canada Company, and they were left in the hands of receivers, to be operated, and to have the income applied in satisfaction of the rent, and, after that, of the mortgage debt, subject to the control of the court of chancery. Vermont & C. R. Co. v. Vermont Cent. R. Co., 34 Vt. 1. After that decree, an agreement was entered into between the Vermont and Canada Company and other security holders, sanctioned by a special act of the legislature of the state, by virtue of which a further decree was entered up in the cause, authorizing an increase of the stock of the Vermont and Canada Company to two millions of dollars, and providing for the payment of rent equal to eight per cent. annual interest on that amount, which was to "be paid by the trustees and receivers from time to time in possession of said roads and property, and from the income thereof," and, for the payment of the residue, after paying certain expenses, to the subsequent security holders, and for keeping the cause on foot, with liberty to any party to apply to the court for further orders therein. The trustees and receivers in possession, from time to time, with consent of the Vermont and Canada Company, and some of the other security holders and representatives of others, obtained orders of the court for, and negotiated, equivalent loans. In the fore part of 1871, they represented to the directors of the defendant, that they were under a large floating debt, incurred in building extensions of the Vermont and Canada Railroad, in improving the road-beds and superstructures of the Vermont Central and Vermont and Canada roads, and in procuring additional equipment for them, and proposed measures for relief. They adopted a resolution providing for new stock to pay for and represent the cost of the extension, and for a new loan of a million of dollars, to be endorsed and guaranteed by that company, and for a meeting of the stockholders to consider the subject. Meetings of the directors and stockholders were held on the 16th day of May in that year, and it was voted at each, that the company should endorse and guarantee the notes of the trustees and managers, to the amount of one million of dollars, payable in twenty years from date, and bearing interest at the rate of eight per cent. per annum, payable semiannually, and the treasurer was authorized to execute the endorsement and guarantee. Application to the court was made immediately by the trustees and managers, for leave to the Vermont and Canada Company to issue new stock, and for them to issue their notes for the loan, which was granted, and that company was authorized to issue five hundred thousand dollars of new stock, on account of the construction of the branches, to meet a part of the floating debt, and the trustees were authorized to issue their notes, as stated, to the amount of a million of dollars, to be endorsed and guaranteed by the company, to meet the residue. The notes were issued in sums of one thousand dollars each, by which the trustees and managers, as trustees and managers only, reciting that it was in accordance with the votes of the stockholders of the Vermont Central and Vermont and Canada Railroad Companies, and by virtue of a decree of the court of chancery, as well as of a special act of the legislature of Vermont, promised to pay to the order of the Vermont and Canada Railroad Company, the sum, at the time specified, with interest at the rate specified, at their office in Boston, on presentation of the interest coupons attached, and signed by the trustees and managers as such; and interest coupons, payable to bearer, for each instalment of interest, were attached. On each was endorsed, by the treasurer, under the seal of the defendant company: "For value received, the Vermont and Canada Railroad Company hereby guarantee the payment of the within note, principal and interest, according to its tenor, and order the contents thereof to be paid to the bearer." The notes so executed and endorsed were put upon the market, and the plaintiffs purchased fifty of them at par and one-eighth, without notice in regard to them beyond the general knowledge, open to all, of the location and situation of these railroads, and what appeared upon, and would be suggested by, the face of the instrument. The coupons were paid by the trustees and managers to January 1st, 1876. Those falling due July 1st, 1876, and January 1st, 1877, were not paid. The "demand, notices and protest of said coupons as they fell due." is admitted in writing by the defendant. This suit is brought to recover the amount due upon them.

The defendant insists, that the agreement of guarantee and the obligations of endorser were, under the circumstances, wholly outside the scope of the corporate powers of the defendant and not binding; that it was mere accommodation paper as to the defendant, and that the guarantee was, therefore, not binding; that the endorsement is not sufficient in form to bind the defendant as endorser; that its liability as endorser would not become fixed by the demand, notice and protest admitted of the coupons; that, if the endorsement was sufficient and the protest good, the guarantee, coupled with the endorsement, would show that both were for accommodation, and prevent liability of the defendant.

The statute law of the state then was and now is: "Every railroad corporation within this state, if it shall vote so to do, at a meeting of the stockholders, called for such purpose, shall have power to issue their notes or bonds, for the purpose of building or furnishing their roads, or pay-

ing any debts contracted for building or furnishing the same, bearing such a rate of interest, not exceeding seven per cent., and secured in such manner, as they may deem expedient." Gen. St. Vt. 237, § 97. "All notes or bonds which may be issued under and by virtue of the provisions of this chapter shall be issued for a sum not less than one hundred dollars, and shall be made payable in not less than three years, nor more than twenty years, from the time of issuing the same." Id. § 99. The form in which railroad companies should become parties to notes or bonds issued, whether as makers, guarantors or endorsers, would not seem to be important for bringing them within the provisions of these sections, if their object should be within the scope of the power conferred, and they should not be issued contrary to the provisions. The power extends to building and furnishing their roads and to paying debts for those things. In this case, no witness has testified directly to what the purpose was for which these notes were made and sold. All that appears on that subject is what appears from the corporate acts and conduct of the defendant in connection with, and upon the representations of, the trustees and managers. They were issued and sold to pay a floating debt. This debt was represented to be for construction of new road under the charter of the Vermont and Canada Railroad, and for improving the road-beds and superstructures and providing equipment for both roads. The defendant voted to issue its new stock to pay for the construction, and to endorse and guarantee the notes to pay the rest of the debt, upon these representations. The question of fact involved is to be found upon such evidence as is competent to bind the defendant. This corporate action is deemed sufficient to show, as against the defendant, that the debt was, and it is found to have been, a debt contracted for those purposes. This purpose was building and furnishing the roads, within the meaning of the statute. The power only extends, however, to building and furnishing their roads, and, if these were not the defendant's roads, this building and furnishing did not come within the statute. It is said, in argument, that the defendant has never actually had any railroad at all; for, it leased its road by perpetual lease, before it was built, reserving to itself rent, so that it had nothing left but a rent charge upon the roads of others. Litt. § 218; Co. Litt. 144a. This is true, except as to the stipulation for re-entry into the road leased, and the conveyance taken of the other to secure the rent, and true notwithstanding them, until there was a default entitling them to the roads, and until it availed itself of its right to the roads. When their proceeding in equity to enforce the security produced a receiver of the roads and put them into the possession

of receivers, the receivers were mere officers of the court, without any rights whatever of their own, and they held the property under the direction of the court, by the title of and for whoever should ultimately be entitled to it. The supreme court of the state held that the defendant was entitled to it to hold until the profits should pay the rent, but, under the then existing circumstances, left the roads in the hands of the receivers, and accorded to the defendant its rights, by requiring the profits to be paid upon the rent. The roads were, then, the roads of the defendant, and would continue to be so until the rent should be paid. The agreements and transactions which resulted in the compromise decree did not vary the title and right of the defendant to the property. By the express terms of the decree, it was provided, clause fourth: "That rent shall be paid to said Vermont and Canada Railroad Company, upon said sums of two millions of dollars, chargeable upon the whole property and income of said roads, as a first lien thereon," &c. There was no conveyance by anybody to the trustees and receivers. They were there in possession, under the orders of the court, without title of their own, and were merely left there without title of their own, and with no provision for them to acquire title. The ownership was that of the defendant, to the extent of its rent, then in the mortgagees of the first mortgage, to the extent of the mortgage debt, and then in the mortgagees of the second mortgage, to the extent of that debt, and then in the Vermont Central Railroad Company. The arrangement, so far as its terms were concerned, was perpetual. If successful enough, it might work out a right in the Central Company to the possession of the roads, subject to the lien of the defendant, by paying off the mortgage, after satisfying the accruing rent, but that would never increase the rights of the trustees and receivers; they would all the while remain in possession for others. In this situation they were claimed to be, and for some purposes were held to be, receivers of the court. Vermont & C. R. Co. v. Vermont Cent. R. Co., 46 Vt. 792. When they asked for an order to sell the property as receivers, the supreme court of the state held that they were not receivers strictly, but rather managing agents. Id., 50 Vt. 500. It is no part of the present purpose here to do more than ascertain whether, under the laws of the state, and the procedure, as expounded by the courts of the state, the roads were the roads of the defendant for furnishing and equipment. For this purpose it is not necessary that they should belong to the defendant absolutely, to every intent and for all other purposes, but is enough if they so belonged for the present purposes needing the furniture and equipment. If agents, there must be a principal, and, in the transactions creating the

agency, there was no party more prominent in the character of principal than the defendant. If receivers, they wanted the money got for these notes for the improvement of the defendant's property in their hands as receivers, in the manner authorized by the statute; if agents, they wanted it for the same purposes for the property in their hands as agents. They executed the notes in the character only in which they held the property, and not as individuals. That would only bind the right by which they held the property, which was all subject to the defendant's right, except so far as, if at all, they represented the defendant. So that, until the defendant's right to the property should be satisfied, the defendant was the sole party, in reality, to the notes, and the sole party to be benefited by the consideration of the notes. Without the furniture and equipment of the roads, the trustees could earn nothing for the defendant. Its interest was that of an owner, direct, and not remote. In this view the defendant became liable upon the notes, as guarantor, to any one to whom the guarantee would run, and who would be entitled to sue upon it.

This guarantee is not, in terms, negotiable. By it the defendant guarantees the payment of the note, principal and interest, "according to its tenor." The note being negotiable, perhaps these words draw that quality into the guarantee. If they do, the guarantee would seem to be negotiable. Story, Prom. Notes, § 484. If not, in Partridge v. Davis, 20 Vt. 499, Davis, J., seems to have thought such a guarantee would, in effect, be negotiable; while in Sanford v. Norton, 14 Vt. 228, and Sylvester v. Downer, 20 Vt. 355, the late Chief Justice Redfield was clearly of the opinion that, like ordinary simple contracts, such guarantees would not be negotiable. No case has been noticed in which this precise question has been settled by the decision of the highest court of the state of Vermont, where this contract was made. The plaintiffs are remote holders, and had no transaction directly with the defendant, and cannot recover upon the guarantee itself, unless it is negotiable. It is not, however, necessary to decide upon this here, unless the endorsement or protest is defective, for, the amount and effect of recovery would be the same upon the endorsement as upon the guarantee.

The endorsement was filled up by the endorser when it was made; therefore, it is not capable of being filled up by an implied authority to write what would be according to commercial usage and the presumed intention of the parties, or of being altered to that, as would have been the case if the endorsement had been in blank and been left so, or had been wrongly or defectively filled up by some one besides the defendant, afterward. It is what the defendant made it, and all that was made or authorized in that behalf, and must speak for itself. The notes were payable to the defendant or order; the defendant, by the endorsement, ordered the contents of the notes to be paid to the bearer. The language used is like that which would have been used by the defendant in drawing a bill of exchange in favor of the bearer, on the makers of these notes. In that case, the defendant would order them to pay the sum named in the bill to the bearer. In this case, the defendant orders them to pay the sums named in the notes to the bearer. In each case, by assuming to order the money to be paid, the party undertakes that it shall be paid, if due diligence, according to the law-merchant, is used. This endorsement seems to be ample and appropriate for the purpose of laying a foundation for liability, and not to be unusual. Story, Prom. Notes, § 138, note. Vincent v. Horlock, 1 Camp. 442, and the language of Lord Ellenborough used therein, have been referred to by counsel for the defendant, as showing that such an endorsement would create no liability, although it would carry the title to the note. One Jacks drew the bill payable to his own order and endorsed it in blank and delivered it to the defendants. One of the defendants, a firm, wrote over the signature of Jacks: "Pay the contents to Vincent & Co.," without signing it at all. So, the defendants' names were not on the bill at all. The point was, whether writing those words over the name of Jacks made the defendants liable as endorsers. As to that, Lord Ellenborough did say: "We see these words, 'Pay the contents to such a one,' written over a blank endorsement every day, without any thought of contracting an obligation; and no obligation is thereby contracted." That all would agree to.

The protest itself is not shown, but demand, notices and protest of the coupons, as they fell due, are admitted. The endorsements are upon the notes and not upon the coupons. The only question about this is, whether the case shows that the instruments endorsed are the ones protested. If not, the liability as endorser may not be fixed, for want of that connection. The notes ran, that interest should be paid on presentation of the coupons. The plaintiffs held both notes and coupons. The coupons themselves contain promises to pay, but there is no reference to the defendant in them. The notice admitted, which must have been notice to the defendant, could not have been given without production of the notes as well as of the coupons. So, the admission, in connection with the circumstances, is taken to mean, that the notes and coupons were presented together, and payment thereupon was refused, and that protest was made for that non-payment, whereby the liability of the defendant as endorser became well fixed.

These notes were issued in sums of not less than one hundred dollars each, and made payable in not less than three nor more than twenty years from the date of issue, and are in accordance with the provisions of the stat-

ute in all respects, except that their rate of interest is eight per cent., while the statute recited provides for a rate not exceeding seven. In Vermont, where this contract was made, stipulating for or taking interest at a rate greater than the law allows does not vitiate the obligation. If such interest is not paid, it may be recovered for at the legal rate; if it is paid, the excess may be recovered back. In Massachusetts, where the notes were payable, no rate of interest was unlawful. If the law of Massachusetts is to govern, this feature of the notes cannot affect the right of recovery at all; if that of Vermont, it can only affect the rate of recovery and the amount.

In ordinary cases, where there is no limitation upon the power to enter into such a contract, nor anything otherwise to affect its inherent validity, interest may be stipulated for, and is to be paid according to the law of the place of payment or performance. 2 Kent, Comm. 460, note c; Story, Prom. Notes, § 155; Andrews v. Pond, 13 Pet. [38 U. S.] 65. But, where the power to enter into such a contract, or the validity of it when entered into, depends upon the law of the place where made, or the contract is made apparently with special reference to the law of that place where made, that law governs. De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367; Andrews v. Pond, 13 Pet. [38 U. S.] 65. In Cheever v. Rutland & B. R. Co., not reported, the notes were executed in Boston and payable there, but were made by a railroad corporation of Vermont, and were to bear interest at seven per cent., and, on their face, referred to the statute before recited, as authority for issuing them at that rate. The legal rate in Massachusetts was, at that time, six per cent., and the defendants contended that the law there should govern, and that only six per cent. could be recovered. The supreme court of Vermont held that the law and rate of Vermont must govern. Steele, J., in the opinion, (Pamph. p. 16,) said: "The situation of the parties and of the subject-matter of the contract may conclusively show that the parties contracted, in good faith, with reference to the law of the state where the security was located, and fixed upon some commercial centre as the place of payment, merely for the convenience of the holders of the loan, who, in such cases, are often widely scattered and continually changing." In Andrews v. Pond, 13 Pet. [38 U. S.] 65, 78, Chief Justice Taney said: "The question is not which law is to govern in executing the contract, but which is to decide the fate of a security taken upon an usurious agreement, which neither will execute. Unquestionably it must be the law of the state where the agreement was made and the instrument taken to secure its performance."

These notes, on their face, are executed by trustees and managers, as such only, and refer to votes of stockholders of the Vermont Central Railroad Company, and of the Vermont and Canada Railroad Company, Vermont railroad corporations, to a decree of the court of chancery, and to a special act of the legislature of Vermont, as authority for their issue. The endorsement of the defendant was made expressly by virtue of a vote of the stockholders, at a meeting duly called. The whole life of the contracts, as well of that shown by the endorsement, as of that shown by the note itself, not only in fact depended upon the law of Vermont, but was upon the face of each instrument shown to so depend. The law which gave the authority limited the rate of interest to be paid. The law was as if a part of the contract, and the limitation was inseparable from it, and would follow it everywhere. The contract of endorsement is separate from that in the notes, and may be so as to interest, as well as in respect to any other feature. Slacum v. Pomery, 6 Cranch [10 U. S.] 221; 2 Kent, Comm. 460.

This action is upon the notes themselves, for a breach of the contract expressed there, to pay the interest on the notes, on presentation of the coupons. It is not exclusively upon the coupons, although they each contain an express contract, and would furnish ground for an action. So, the action is wholly for interest, as such, and the plaintiffs are entitled to recover for the interest at the rate allowed by law, and not more. The right to recover stands upon the same ground precisely as the right to recover interest, when due, upon ordinary contracts to pay interest annually or semi-annually, except that here the law allows seven per cent., while in ordinary contracts it allows only six.

There are two instalments of interest on fifty notes of one thousand dollars each, one of which was due July 1st, 1876, the other January 1st, 1877. On each the defendant became liable to pay seventeen hundred and fifty dollars at those respective times. Payment was not made. There was no agreement to pay interest on those sums if payment should not be made. The statute quoted did not fix a rate in the absence of a contract, but merely permitted a valid contract to be made up to that rate. As the defendant did not pay, it became liable for interest as damages, as in cases of the breach of ordinary money obligations, from the time when payment should have been made. The same question arose in Cheever v. Rutland & B. R. Co., before mentioned, upon this same statute, and was so decided there. Pamph. p. 19.

These conclusions make it unnecessary to decide the questions so fully and ably discussed by counsel, as to whether the defendant could be held, under the circumstances, if the undertaking had been without the scope of the corporate powers of the defendant. As great pains as have been practicable, and more space than usual, have been taken with this cause, as well on account of

the large interests otherwise involved in these questions, as of the just rights of the parties to this suit. There must be a judgment for the plaintiffs, for the two instalments of seventeen hundred and fifty dollars each, with simple interest thereon, in all, $4,033.75.

[NOTE. Defendant subsequently moved for a new trial, and the motion was denied. Case No. 2,936.]