DUDLEY PITKIN v. H. C. & N. B. FLANAGAN.

*Bill of exchange.   Accommodation indorsers.*

Where different persons successively indorse accommodation paper, before it goes into circulation, for the mere purpose of obtaining a discount for one of the parties, they will be held to undertake jointly or severally to pay it, upon proper demand and notice, if the party obtaining the discount does not meet it at maturity.   And parol evidence is admissible, to show the circumstances, under which the bill was signed.

As between accommodation indorsers, who all sign, before the paper is put in circulation, at the request of the person for whose benefit it is made and to give him credit, the order of the indorsement raises no presumption of any obligation among themselves, different from what arises from the other facts in the case.

ASSUMPSIT, brought against the defendants as indorsers of a bill of exchange, for $450,00, dated April 4, 1848, and payable in four months, drawn by B. & H. Boynton upon Ray Boynton, in favor of Jedediah Boynton, and accepted by Ray Boynton, and indorsed, successively, by Jedediah Boynton, by the defendants, and by the plaintiff.   Plea, the general issue, and trial by the court, March Term, 1850,—BENNETT, J., presiding.

On trial the facts appeared as follows.   The firm of B. & H. Boynton, being indebted to the plaintiff, executed and delivered to him their promissory note, payable to the plaintiff, or order, at the Bank of Burlington, which note was indorsed by the plaintiff, and was discounted by the bank for him ; but, as between the plaintiff and B. & H. Boynton, it was the duty of B. & H. Boynton to pay it to the bank.   Subsequently, and for the purpose of taking up this note, B. & H. Boynton, who resided in Williston, Vermont, drew the bill in suit, for the amount, upon Ray Boynton, of the city of New York, and procured his acceptance ; and the bill, being made payable to Jedediah Boynton, was indorsed by him and by the defendants, successively, all for the accommodation of B. & H. Boynton, and to enable them to take up the note to the plaintiff, which was then at the bank and about to become due.   The bill was presented at the bank, by B. & H. Boynton, for discount ; but the bank declined to dis-

count it, without the name of the plaintiff upon it; and thereupon, at the request of B. & H. Boynton, and upon being informed by them of what had transpired at the bank, the plaintiff, knowing that the defendants had indorsed the bill, wrote his name upon the back of it, next after the name of the defendants ; and the bill was then received by the bank and its avails applied to pay the former note of B. & H. Boynton. The bill was duly presented and protested, and all the parties duly notified, and the plaintiff was compelled to pay the whole amount of the bill. The defendants, previous to this suit being entered in court, paid to the plaintiff one half of the amount so paid by him, with all the cost to that time ; and the plaintiff now claimed to recover the residue of the amount paid by him.

The county court, upon these facts, rendered judgment for the plaintiff, for the amount paid by him, deducting the amount paid to him by the defendants. Exceptions by defendants.

*A. Peck* and *C. D. Kasson* for defendants.

The defendants, upon the facts, are sureties, and, as to them, B. & H. Boynton and the plaintiff are principals. If the plaintiff is not a principal as to the defendants, then, as the bill was drawn by B. & H. Boynton, and was indorsed by Jedediah Boynton and by the defendants and the plaintiff, for the accommodation of the drawers, while it was still in the hands of the drawers, and before it became operative as an instrument by delivery, the plaintiff and defendants, not being parties to the bill, are joint makers, or drawers, and the plaintiff can claim from the defendants but one half of the amount of the bill. *Knapp* v. *Parker*, 6 Vt. 642. *Flint* v. *Day*, 9 Vt. 345.

If the plaintiff and defendants are to be treated as indorsers, they are joint indorsers, as they both signed for the accommodation of the drawers, and before the note was delivered, and both stand in the same relation to the drawers, and indorsed to give additional security to the bill, and not to transfer it. And although a *bona fide* holder for value has a right to treat the parties to a bill, or note, according to their apparent relation to it, yet, as between the immediate parties, it is always open to evidence, to show the actual relation of the parties. Chit. on Bills 75.

Whether the plaintiff and defendants are treated as joint drawers,

or joint guarantors, or indorsers, either joint or several, still they are
but sureties for B. & H. Boynton for the amount, and both stand
precisely in the same relation; and after the bill is paid by one, the
rights of these parties must be determined by the actual relation of
the parties, and not by the *form*, which the security, for the con-
venience of the drawers, assumed. *Douglass* v. *Wendall*, 1 Ham.
R. 413. The case of *McDonald* v. *McGruder*, 3 Pet. 470, differs
from the case at bar. The court decided that case upon the authority
of *Brown* v. *Mott*, 7 Johns. 361,—which was decided without argu-
ment, and the question of contribution was not attended to, or deci-
ded. See 1 Story's Eq. 503, § 495. Birge on Sur. 383. *Deering*
v. *Earl of Winchelsea*, 1 Cox 318.

*S. Wires* and *W. W. Peck* for plaintiff.

The facts requisite to charge the defendants as indorsers having
been proved, the plaintiff was entitled to recover the entire bill and
notarial expenses, deducting the payment made by the defendants.
He indorsed at the request of the defendants; and the extent of their
liabilities is to be determined by the legal import of their indorse-
ment. *Carey* v. *Scott*, 3 B. & A. 609. *Norton* v. *Pickering*, 8 B.
& C. 610. *Brown* v. *Mott*, 7 Johns. 361. *McDonald* v. *McGruder*,
3 Pet. 470. *Church* v. *Barlow*, 9 Pick. 547. *Commercial Bank* v.
*Cunningham*, 24 Pick. 270. *Mallett* v. *Thompson*, 5 Esp. R. 178.
*Saxton* v. *Peat*, 2 Camp. 185. *Collott* v. *Haigh*, 3 Camp. 281.
*Kinmam* v. *Cole*, 3 Camp. 262. *Price* v. *Edmunds*, 10 B. & C.
578. *Yallop* v. *Ebers*, 1 B & Ad. 698. *Nichols* v. *Norris*, 3 B.
& Ad. 41.

The opinion of the court was delivered by

REDFIELD, J. So far as we know, or can learn from the English
books upon the subject, this kind of paper, which comes up in the
present case, for the mere purpose of obtaining bank discounts, is
not much known in Westminster Hall. It seems to be mostly an
invention of a Cisatlantic origin. For this reason, probably, we find
almost nothing in the English books, which affords much aid in de-
termining the case.

What is said in Story on Prom. Notes, § 292, and in *Cony* v.
*Scott*, 3 B. & Ad. 619, only shows, at most, that an accommodation

Pitkin *v.* Flanagan.

indorser is entitled to notice of non-payment, where he had any other party to whom he could resort for indemnification. And the court say, such an indorser clearly could resort to the party, for whose accommodation he drew or indorsed the bill, and is therefore clearly entitled to notice. And the judges incline also to the opinion, that such a drawer is entitled to go against the acceptor, upon the ground that as between them the undertaking of the drawer is subordinate to that of the acceptor, even when both are for accommodation of some third party merely, upon the ground that one who consents to stand as acceptor, although merely for accommodation, is bound to indemnify the drawer and indorsers for accommodation also. But this point is not fully settled there, and is one upon which the cases are not, perhaps, altogether decisive. But if it were conceded, it is certainly not decisive of the present case. That must go upon the ground of an implied understanding, growing out of the relation in which the parties stand to each other on the bill. For in the very case of *Cony* v. *Scott,* the party for whose accommodation the bill was drawn, accepted and indorsed, stood as indorsers themselves, and *prima facie* might go against the drawer and acceptor; but it was clearly held, that upon the facts the drawer might go against them,—and so also the acceptor for accommodation.

So, too, in the present case, although B. & H. Boynton might have appeared as the last indorsers, any of the prior parties, who signed for their accommodation, might clearly go against them. And it seems very clear to us, that parol proof is competent to be received, to show the circumstances under which the plaintiff and defendant signed this bill. And unless there is some settled rule of law, which the defendants are bound to know, and which the court must presume the parties acted upon in signing this paper, by which successive indorsers, for accommodation merely, are understood to have a right to indemnity against all prior indorsers, then the case should be decided upon the natural import of the transaction, as it occurred, which is, that the plaintiff signed as an additional surety for B. & H. Boynton. In regard to the admission of evidence, to show the import of a blank signature upon negotiable paper, as between the immediate parties, we do not desire to say more, than to refer to the cases already decided in this state, and which we think clearly applicable to the present case. Washb. Dig. 674. *Sanford*

v. *Norton*, 14 Vt. 228, and cases cited. Upon the question, whether the facts, which appear in the present case, in their natural bearing, aside from any artificial weight which the law may give them, show a case of joint suretyship or not, we feel constrained to say, that the case is altogether clearer, in our judgment, in favor of that construction against the plaintiff, than is the case of *Flint* v. *Day*, 9 Vt. 345, where the defendant was held liable to contribution as co-surety.

There are many cases in the books, where one has signed as surety after other sureties had signed, where he has been held not liable to contribution. That must always be the case, where it is so agreed between him and the other sureties, either expressly or by reasonable implication. And some of the New York cases allow of such a construction upon slight evidence, if we recollect correctly. In *Harris* v. *Warner*, 13 Wend. 400, where the last surety upon a note signed " as surety for the above names," he was held not liable to contribute to a prior surety. And in *Longley* v. *Griggs*, 10 Pick. 121, one who guaranteed the sufficiency of a note signed by sureties was held not liable to contribution. But the case of *Flint* v. *Day* would seem to require the consent of the other sureties to such an arrangement, in order to give a surety a right to go for the whole debt against a prior surety. *Lapham* v. *Barnes*, 2 Vt. 213. But some of the cases seem to hold, that if the last surety limit his liability to the default of the principal and all the other sureties, he has a claim for full indemnity against them all jointly. *Craythorne* v. *Swinburne*, 14 Ves. 160, and other cases cited in the note to *Deering* v. *Earl of Winchelsea*, in White & Tudor's Leading Cases in Equity.

The present transaction, in its natural import, was nothing more than B. & H. Boynton obtaining a discount at the Bank of Burlington, and applying the money to pay a debt they owed the plaintiff, by his signing for them, together with the defendants, both signing at the request of the principals, and without any communication with each other. The case, in its facts, is identical with that of *Flint* v. *Day*, except that Day signed without any express request from any one, and expressly declared at the time that he did it upon the credit and for the honor of Flint. I have thought for many years, that that case might, with great propriety, have been ruled for the defendant upon the facts.

Pitkin *v.* Flanagan.

But in the present case nothing of the kind appears, unless the law gives some artificial force to the mere order of indorsement. If this were a settled rule of the law merchant, we should of course presume the parties acted upon such an expectation. And whether the rule were known to the court or not, if it were clearly shown to be a settled rule among merchants and business men, it could be proved as a matter of fact to the jury, and would have the force of law. Most of the rules of the law merchant have grown up in that way, by the course of business and the practice of merchants, and when the rule becomes, by common consent, altogether uniform, it acquires the force of law, and is adopted by the courts,—through the agency of special juries of merchants, in England, more often perhaps.

But that is not claimed in the present case. But it is claimed, that the decisions of the courts show such an inclination in that direction, that it should be regarded as law, that successive indorsements, made at the same time, before the paper ever goes into circulation, and for the purpose of giving it its first start, so to speak, and all for the accommodation of the drawer, are to be regarded in the same light as if they had been made in the due course of business, the bill actually passing, from hand to hand, for value;—that is, in the same light as to the rights of these several indorsers among themselves. Now, since it is admitted, that a different rule does obtain in some of the states, and no such rule has ever been adopted in this state, or at common law, it would be wonderful, if all the parties to this bill so understood the matter among themselves, at the time of its discount; for it is, after all, mere paper for discount at the bank.

But it must be admitted, we think, that had the plaintiff taken the bill and paid the money for it, when the bank refused to discount it, and indorsed it in order to obtain the money upon it, he could, upon being compelled to take it up, have gone against the defendants for the full amount. That was the legal import of the defendants' undertaking. And the bank refusing to take it, and the plaintiff knowing, the defendants were mere accommodation indorsers, it would not have precluded him from the common rights of an indorser, had he taken the bill and passed it in the ordinary way. This must be regarded as undeniable, I think, upon common principles,

and expressly within the principle of the case of *Bank of Burling-ton* v. *Beach*, 1 Aik. 62. And it is claimed, upon the American decisions, that the court should so hold in the present case.

It is admitted, that the case of *Douglass* v. *Waddle*, 1 Ham. 413, 9 Ohio R., is an authority, or a decision, in favor of holding the plaintiff and defendants as co-sureties.

Upon the other side, *Brown* v. *Mott*, 7 Johns. 361, is relied upon; and it seems to me to be very much the same case as the present. The court seem to beg the question, however, in the opinion, taking it for granted, that the plaintiff's rights are the same, as if he had himself taken the bill and paid the value of it in the due course of business. They then ask, whether he could recover against a prior indorser, whom he knew to have indorsed for the accommodation of the drawer, which, in my judgment, is not the question, and is in fact no question at all. The question of co-suretyship does not seem to be raised in the case.

*McDonald* v. *McGruder*, 3 Pet. 470, seems in principle much the same case as the present; and Ch. J. MARSHALL discusses the question of co-suretyship, but seems to consider, that there should have been some communication between the parties, to constitute that relation under the circumstances. Ch. J. MARSHALL says, if such is the contract, the parties, although signing as successive indorsers, will be regarded as co-sureties; thus treating the obligation as resting in oral proof. But he considers, that, in the absence of proof, it is to be considered, that the second indorser has the same rights against the first, as if he took the bill in the due course of business. But that is the question; and we can see no good reason for that rule in this case more than in every other case, where the parties, for convenience, consent to change positions with each other, to enable the party accommodated to gain credit,—as is very common, where the real surety assumes the position of the debtor, and gives the principal debtor the benefit of appearing as a mere surety. We think it better to call things by their right names. Such indorsers are in fact mere sureties, and any number of them, who sign for the same object, without much regard to priority, perhaps, should be regarded as co-sureties. And none of the recent cases regard it as of any importance, that there should have been any communication between the sureties. All that is necessary is, that they should have

undertaken for the same thing, either by the same or separate in-
struments.   In the present case the undertaking was, that the Boyn-
tons should pay the money.

*Church* y. *Barlow*, 9 Pick. 547, seems to me to be the very case
before the court, and was decided upon the ground, that such a
note, or bill, is entitled to be treated, in all respects, as a business
note, even between the successive indorsers, who signed at the same
time, and before the note took effect virtually.   And so also the case
of *McDonald* v. *McGruder*, with this difference, that McGruder was
all along upon Turner's paper, until his co-indorser had left and the
paper been protested, and then McDonald comes in as a second in-
dorser, to obtain an accommodation for McGruder's relief,—which
last note was in the same manner renewed several times, McGruder
always signing first.   These circumstances tend very strongly to
show an understanding, that McDonald should only stand as a guaran-
tor of the sufficiency of all the prior parties.   But here the relative
position is reversed, and the one who takes the real benefit of the
discount is the last indorser, and claims to recover the whole amount
of a mere surety, who indorsed for mere accommodation, and de-
rived no benefit whatever from the discount.   If the defendants had
been the second indorsers in this case, it would alter the case, in its
equitable aspect, very materially.

And in none of the cases cited, which we have had an oppor-
tunity of examining, has the person ultimately benefitted by the dis-
count stood as last indorser, and claimed and obtained indemnity
against the prior mere accommodation indorsers, upon the ground
only of juxtaposition upon the paper.   And without some communi-
cation between the parties, or some facts in the case, making a show
of justice in the plaintiff's claim, we think he can, at most, only
claim to stand as co-surety.   The case of *Brown* v. *Mott* is most
like the present in regard to the equitable rights of the plaintiff.
And while we admit, that one, who, under similar circumstances,
takes a bill and advances the money in the due course of business,
or passes it to the credit of the holder, may go against all the prior
parties, and also that one who indorses a bill, after it is in circula-
tion, for the honor of the drawer, must be entitled to indemnity
against the prior parties, as a general rule, perhaps,—yet it seems to
us, that where different persons successively indorse paper of this

character, for the mere purpose of obtaining a discount for one of the parties, and before the paper ever goes into circulation, they should *prima facie* be held to have undertaken for the same thing; that is, that the person obtaining the discount shall repay it, and if not, that, upon proper demand and notice, they will undertake either jointly or severally that they will pay it. In either case, as among themselves, they will be holden as co-sureties only. Of course, it is understood, that any *bona fide* holder of the bill, or note, may go against the prior parties, in the order in which they stand, without regard to the mode in which the paper was put in existence; and his knowing these facts before he takes the paper will make no difference. The undertaking of the parties is, that, as to any holder of the paper for value, they will stand liable, the same as upon paper negotiated in the due course of business. But this implication does not necessarily control their relations to each other. And under the circumstances of this case, unless it can be shown very clearly, that the defendants consented to assume the entire burden of prior indorsers, as between themselves and the plaintiff, the plaintiff ought to be content to stand on the same footing with them.

I should infer, from the note of cases in the United States' Digest, that the rule contended for by the plaintiff has been adopted in most of the American states, where the question has arisen; but under what circumstances it is impossible to say, without a full examination of the reported cases, which we have not seen. But all the cases, where the question has been raised, seem to recognize the rule, that oral evidence may be introduced to show the understanding of the parties, as to their liability to each other. The only difference between that rule and the one we here adopt is, that they regard the mere order of indorsement as imposing a *prima facie* obligation among themselves, the same as would have existed had the bill passed from hand to hand, in the common course of business; while we hold, that, as between accommodation indorsers, who all sign before the note, or bill, is put in circulation, and at the request of the person for whose benefit it is made, and to give him credit, the order of the indorsement raises no presumption of any obligation among themselves different from what grows out of the other facts in the case; in short, that it is of no importance either way.

It seems to us, too, that such a rule as that contended for by the

plaintiff, is liable to the very greatest abuse, to purposes of fraud and injustice.   It is a kind of obligation, which, we believe, would not be so understood by one person in a thousand throughout the state.

Judgment reversed and case remanded.