JOHN W. SWEET *vs.* JOHN McALLISTER & others.

Parties to a promissory note are liable to each other according to the legal effect of the instrument, in the absence of an express agreement to the contrary; and, in an action by an indorser against the several makers of a note, one of whom signed as surety, to recover for money paid upon it, the burden of proof is upon the latter to show that the relation between himself and the plaintiff was in reality that of co-sureties.

In an action by an indorser against the several makers of a note, one of whom signed as surety, to recover for money paid upon it, the latter does not establish a defence merely by showing that it was given to raise money to pay a former note upon which he and the plaintiff were the first and second indorsers respectively, and that, upon the request of the makers thereof, the plaintiff agreed that, if they would get the defendant to indorse it, he also would indorse it, and the note was made and indorsed accordingly.

The relation of co-sureties between successive indorsers upon a promissory note is not established by showing that the second indorser used language which led the first indorser to believe that he intended to stand in that relation, and the first indorser was thereby induced to indorse it, if the second indorser did not in fact agree or intend to stand in that relation.

CONTRACT to recover for money paid upon a promissory note of $500, signed by the defendant McAllister as surety for the other defendants, Allen C. French and Benoni French, payable to the plaintiff, and indorsed and subsequently paid by him. The action was defended by McAllister alone.

At the trial in the superior court, before *Ames*, J., it appeared that Allen C. French, in May 1859, made an application to the plaintiff to assist him in raising $1000, and the plaintiff agreed that, if French would get his father, Benoni French, to sign the note and McAllister to indorse it, he would indorse it; and a note was accordingly made for that sum, signed by Allen C. French and Benoni French, payable to McAllister, and indorsed by him and the plaintiff, and the sum obtained upon the discount of the note was delivered to Allen C. French. When the note became due, one half of it was paid with funds raised upon another note signed by Allen C. French and Benoni French as principals and McAllister as surety, payable to the plaintiff and indorsed by him. This note was ultimately paid by the plaintiff, who collected the amount of the defendant. The other half of the note for $1000 was paid with funds raised upon the

note mentioned in the declaration, which was subsequently paid by the plaintiff.

The defendant contended that the relation between the plaintiff and himself was that of co-sureties upon the note for $1000, and that this relation was preserved in the subsequent transac : tions; and he requested the judge to rule that this relation exists · between accommodation indorsers who put their names upon a note before it is put into circulation, for the sole purpose of enabling the maker to raise money by having it discounted. The judge declined so to rule, and instructed the jury that the burden of proof was upon the defendant to show that it was agreed and understood between the parties that they should stand as joint sureties.

The defendant then requested the judge to rule that " if the plaintiff used language which led the defendant to believe that he, the plaintiff, intended to stand in the relation to the principals on the note as co-surety with the defendant, and the defendant accepted in that light, and was thereby induced to sign the note as he did, then it amounts to a contract to stand in that relation, whether the plaintiff so intended it or not." The judge declined so to rule, and instructed the jury that if there was an agreement between the parties to that effect, or if the plaintiff unfairly, or by fraud and misrepresentation, induced the defendant to sign the note under the expectation and belief that they were to share the loss equally, and as if they were co-sureties, that would be a good defence to this action.

The jury returned a verdict for the plaintiff, and the defendant McAllister alleged exceptions.

*J. Branning,* for the defendant McAllister.

*J. E. Field & M. Wilcox,* for the plaintiff.

CHAPMAN, J. The rulings in this case were correct and appropriate. Nothing can be plainer than that, in the absence of any proof to the contrary, the parties to a promissory note are liable on it according to the legal effect of the instrument; that is to say, the maker is liable to the payee and indorsees, the payee to the indorsees, and each indorser to the subsequent indorsees. It may be proved by parol that the relation of the

parties to each other is different from this; for example, that the payee or indorsee was the real principal, or that all the parties were joint principals, or some of them joint sureties. *Clapp* v. *Rice*, 13 Gray, 403. But in this case nothing was proved to vary the relation apparent on the note. According to the evidence as stated in the bill of exceptions, when Allen C. French first applied to the plaintiff for assistance, the plaintiff agreed to indorse his note only on condition that he would first get his father to sign it, and McAllister to indorse it. This merely imports that he would assist French as second indorser of such a note.

When the note came to be renewed, the parties acted as if this was the understanding. The defendants signed the note and the plaintiff indorsed it. This act does not imply an agreement of joint liability between the plaintiff and McAllister. The case of *Pitkin* v. *Flanagan*, 23 Verm. 160, is cited as sustaining a contrary doctrine. Some of its *dicta* may seem to do this; but the case itself differs from the present case. And if it is in conflict with that of *Clapp* v. *Rice*, we must adopt the latter as our guide. In the absence of fraud and misrepresentation, nothing short of an agreement would make the plaintiff jointly liable with McAllister.

The court rightly ruled that he would not be liable without an agreement, even though his language led McAllister to believe he intended to be thus liable. The contrary doctrine would make him responsible for the mistaken belief of McAllister, which is too unreasonable to require refutation.

*Exceptions overruled.*