## MATTHEWS v. BLANKS.

### Opinion delivered December 22, 1900.

1. SETOFF—JUDGMENTS.—Replevin was brought by the owner of chattels in possession of an employee. The employer procured a retention bond to be executed in the employee's name, and sold the chattels. Judgment was rendered on the bond in favor of the plaintiff therein against the employee. The employer paid off the judgment, and took an assignment thereof to himself. Subsequently the employee obtained a judgment upon contract against his employer, against which the latter sought to setoff the first-named judgment. *Held*, that the employer made himself liable for the judgment against his employee by selling the chattels, and that the setoff of judgments was not allowable. (Page 504.)

2. SALE—WARRANTY OF TITLE—REMEDY.—A purchaser who loses a chattel by the interposition of one who has a paramount title must look for redress to his immediate vendor, and cannot, by suing the latter's vendor, cut off any defenses which he may have against his immediate vendee. (Page 505.)

Appeal from Little River Circuit Court in Chancery.

WILL P. FEAZEL, Judge.

#### STATEMENT BY THE COURT.

The appellees, R. B. Blanks, doing business under the name and style of the Monroe Stave Factory, at Monroe, Louisiana, George Rosenberg and A. Goldsmith, filed a complaint on the chancery docket in Little River county, Arkansas, July 15, 1896, against James M. Matthews, alleging that on the 14th day of July, 1896, the said Matthews had recovered a judgment against them for $730.10, besides costs of suit. The said A. Goldsmith and George Rosenberg were sureties for said Blanks to discharge the attachment that had been issued and levied on certain staves when the suit was begun. That on the 19th day of May, 1896, one Arthur G. Newton recovered a judgment against the said James M. Matthews for the sum of $1,293.60 for his debt and costs of suit, $439.20, amounting in the aggregate to $1,732.80; that on the 5th of June, 1896, Newton

32

assigned and transferred the judgment to R. B. Williams, and in June, 1896, the said Williams transferred the judgment to R. B. Blanks; that said judgment had never been satisfied, vacated or superseded; that said James M. Matthews was hopelessly insolvent, and that plaintiffs were solvent. They prayed that the judgment which Newton had recovered against Matthews be setoff *pro tanto* against the judgment recovered by Matthews against said plaintiffs.

1.  The answer of defendant Matthews admitted the recovery of the judgment against him in the United States circuit court by Newton, but averred that the said judgment was rendered in a replevin suit by Newton against him and others wherein Newton had claimed to be the owner and entitled to the immediate possession of 80,000 oak staves, of the value of $3,600; that the judgment was rendered for the recovery of 61,600 staves, which the jury found to be worth $1,293.60.

2.  That when the said staves were seized by the marshal, the said R. B. Blanks caused to be executed a cross or retention bond, which he delivered to the marshal, who approved said bond, and thereupon the said Blanks received from the said marshal the possession of said staves, and converted the same to his own use, whereby the said Blanks caused it to be impossible to comply with the judgment of said court to return said staves, and therefore said Blanks was estopped from claiming any benefits from said judgment.

3.  The defendant further alleged that, for work and labor done and performed by him in getting out said staves for and under contract with the French Oak Stave Co., said company was indebted to him in the sum of $1,200, which was a laborer's lien upon said staves; that said French Oak Stave Co. sold said staves to said R. B. Blanks, and after it became known that said Newton was claiming said staves, or a large portion thereof, and while the defendant's lien was in full force and effect as between himself and the said Blanks, it was agreed that, in consideration of $500 of said indebtedness, which was secured by said lien, the said Blanks would and did assume to hold harmless the said Matthews from said Newton's claim or suit, and agreed to pay off and discharge any judgment the said Newton might there-

after recover; and that, relying upon said agreement, the defendant released his lien on said staves to the extent of $500, and did not attempt to foreclose it.

4. Defendant claimed his exemptions out of the judgment rendered in the circuit court of Little River county.

5. Denied that Scott & Jones, as attorneys for Newton, had the right to transfer said judgment without authority from Newton.

6. Alleged that the Newton judgment had been fully paid off and discharged,

7. Alleged that Scott & Jones as attorneys for him were entitled to a lien to the extent of one-tenth of the judgment recovered in the circuit court of Little River county.

An amendment to the complaint was filed in the Little River circuit court, re-affirming the allegations of the original complaint, showing that the bond made in the Newton case to retain possession of the staves was made in behalf of said James M. Matthews, so that said Blanks might retain possession of said staves, and that judgment was rendered against the sureties on said bond; that subsequently the said R. B. Blanks, who had induced said sureties to make said bond, paid off said judgment, taking the assignment thereof to himself, and prayed to be subrogated to all rights and remedies of said Newton against said Matthews.

We find from the record that the statement of facts by the counsel for appellant is substantially correct as follows:

"Appellant, Matthews, sold and delivered to the French Oak Stave Co. about 450,000 staves. They were delivered to and accepted by said company on the banks of the Cossatot, Saline and Little rivers. A portion of these staves were cut by Matthews or his sub-contractors from the lands of A. G. Newton. Other persons besides Matthews or his sub-contractors cut staves from the same land, and sold and delivered them to the French Oak Co. along the banks of said rivers. After Matthews had sold and delivered these staves, Newton claimed the staves which had been cut upon his lands, not only by Matthews, but the other persons, and had them (about 86,000) branded with his (Newton's) brand. The French Oak Co. afterwards

sold all its property, including these staves, to appellee, Blanks, doing business as the Monroe Stave Factory. After this last sale Newton instituted suit in the United States court at Texarkana, and under an order of replevin in that case about 66,000 staves were seized by the marshal. This suit was against A. Ehrman, Matthews and others. Ehrman was at the time the general agent and manager of the Monroe Stave Factory, and as such had the possession of its staves in Arkansas. The other defendants were employees of the Monroe Stave Factory, and as such in actual charge or possession of some of the staves. They had this possession by reason of their employment as the representatives of the Monroe Stave Factory, and no claim of possession or ownership in themselves. At the request of Blanks, the Taylor Store Co. and W. H. McWhorter executed the bond to enable Blanks to regain possession of the staves replevied. Under this bond Blanks did so regain possession, and shipped the staves out of Arkansas to Monroe, La. Matthews did not sign this bond, nor was he advised the bond had been executed. The bond was made solely for the benefit of Blanks, who asserted ownership of said staves by reason of his purchase from the French Oak Co., and he states in his deposition that the defendants held the staves as his employees. Blanks employed attorneys, and took the burden of the litigation upon himself. Upon the trial of this cause in the United States court, the staves were found and adjudged to be Newton's property, and judgment entered for their return, or their value as assessed by the jury. Newton, through his attorneys, Scott & Jones, demanded a compliance with this judgment, and threatened the issuance of an execution. The staves were beyond the jurisdiction of the process of the court, and, to relieve McWhorter and prevent the execution being issued against him, R. B. Williams, one of Blanks' attorneys, paid the value of the staves as assessed and the costs to Scott & Jones, and obtained from Scott a transfer of the judgment. The money used in this payment was the money of the said Williams, and the transfer was made directly to him. Mr. Williams stated to Scott, in effect, that he desired this transfer to protect him against any loss he might

sustain by reason of said payment, and Scott stated to Williams that he had no authority to transfer the judgment outside their employment as attorneys by Newton in that case. Very shortly afterwards Blanks paid to Williams the amount by Williams paid on the Newton judgment, and Williams then transferred the judgment to Blanks. The Monroe Stave Factory became indebted to Matthews upon contract, and Matthews brought suit thereon in the Sevier circuit court. The stave factory changed the venue to Little River county, and then, in consideration that Matthews would withdraw from his demand a claim of a double overcharge therein, which he did, it was agreed that judgment by default should be entered in that case, and the same was accordingly entered."

Matthews claimed that, prior to the sale by the French Oak Co. to the Monroe Stave Factory, there was an agreement between Matthews and Ehrman, as the representative of the French Oak Co., that, in consideration of $500 to be retained by the company out of the amount, then about $3,000, which Matthews claimed the French Oak Co. then owed him, it would release him from all liability arising out of the Newton claim, and that this agreement was consummated. It is disputed however by Ehrman that there was such an agreement. It is unnecessary, in the view we have of the case, to set out the evidence pro and con upon this point. It is sufficient to state that the proof by Matthews shows that he was claiming, at the time of the purchase of the staves by Blanks or the Monroe Stave Factory from the French Oak Co., that the latter company was indebted to him in a large sum. Ehrman, while not admitting, does not anywhere positively deny that the French Oak Stave Co. was indebted to Matthews for staves, including the staves sold by the French Oak Co. to Blanks. While Blanks says in one place in his testimony that Matthews "got pay for the staves that judgment was rendered for, he does not pretend to say where nor how." Matthews' testimony was positive that the French Oak Co., the vendor of Blanks, was largely indebted to him for staves. The proof shows by Ehrman, through whom the sale was made, that Blanks "bought all the assets and property of the French Oak Co. wherever

located, free from all claims and incumbrances." The French Oak Co. guarantied the property free from incumbrances.

At the hearing the court found that Blanks, by reason of having paid off and satisfied the Newton judgment against Langfelder, Matthews *et al.*, should be subrogated to all the rights of Newton against said Matthews, and that said judgments and costs should be setoff *pro tanto* against the judgment recovered by Matthews against Blanks in the circuit court of Little River county, save $73.10, the attorneys' fees to Scott & Jones, which had been paid by Blanks, and decree was accordingly entered, and Matthews enjoined from attempting to collect his judgment.

*Scott & Jones*, for appellant.

Upon the sale of a chattel for a fair price the law implies a warranty of title. 1 Parsons, Contracts, 467; 2 Kent's Com. 478; Story, Sales, § 367. The rule which applies to covenants of warranty in transfers of real estate has no application to the sale of shares or other chattels. 5 Cranch, 351; 9 Dana, 43; 4 Ala. 700; 19 Ark. 447. A stranger paying the debt of another is not subrogated to the creditor's right against the principal debtor. Harris, Subrogation, §§ 793, 800, 810; 9 Martin, 602; 3 Paige, 123; 2 Bland, Ch. 199; 12 Am. Dec. 577; 25 Ark. 133; 50 Ark. 586. The payment of a debt, and the assignment thereof to one who is ultimately liable for its payment, will give him no legal right to subrogation. Harris, Sub. § 643; 25 Me. 383; 6 Cush. 143. The person claiming subrogation must be a third person in respect to the obligation of the debt, and not the original debtor. 9 So. Rep. 442. Blanks could not have used the Newton judgment as a setoff in the Little River circuit court. Sand. & H. Dig., §§ 5727, 5861. A judgment may be selected as exempt property. 47 Ark. 464.

*Williams & Arnold*, for appellees.

Upon payment of the Newton judgments, the appellee was subrogated to the rights of Newton under his judgment. 55 Ark. 175; 60 Ark. 325; 19 Ark. 547. The right of subrogation arises by operation of law. Harris, Sub. § 4. In replevin,

if property can be found, the plaintiff has the right to insist upon its return, instead of its value. 50 Ark. 300. Appellee is entitled to subrogation. Brandt, Surety & Guaranty, § 210, 254–298; 55 Ark. 163; Harris, Sub. § 345. The right of subrogation is not confined to strict suretyships. 65 Ark. 444; 60 *id.* 390; 50 *ib.* 73; 56 *ib.* 563–574; 54 *ib.* 273; 53 *ib.* 305, 562, 559; 52 Ark. 1. It is a mode which equity adopts to compel the payment of a debt by one who ought to pay it. Harris, Sub. §§ 1, 2, 13. When one agrees to pay the debt of another, the relation of principal and surety is established. Brandt, Sur. & Guar. § 35; Harris, Sub. 761; 40 Ark. 132. As to the general doctrine of subrogation, see: 32 Ark. 346; Bispham, Eq. §§ 335, 338; 31 Ark. 422. Upon full payment, the surety is subrogated to the remedies of a creditor. Harris, Sub. §§ 153–162, 2, 103, 499, 472, 424; 7 Am. Dec. 494. In English law if a party has two funds, he shall not, by his election, disappoint another who has only one. 1 Vern. 455; 10 Mod. 488; Amb. 614; 8 Ves. 388–391; 9 Ves. 209; Pothier Traite des Oblig., notes 275, 280, 427, 519, 520, 522. A surety is entitled to every remedy which the creditor has against the debtor. 14 Ves. 160; 34 Am. Dec. 739; 26 Am. Dec. 387; 24 Am. Dec. 489; 36 Am. Dec. 591; 93 Am. Dec. 783; 38 Ark. 385; 53 Ark. 545. A purchaser at a foreclosure sale succeeds to rights of mortgagee. 54 Ark. 273. A purchaser at void tax sale will be subrogated to the state's lien for taxes paid. 41 Ark. 119; 42 Ark. 77; 42 Ark. 100; 42 Ark. 140; 55 Ark. 30. Between mortgagor and grantee, the grantee becomes principal debtor, and the mortgagor the surety. 3 Pom. Eq. (2d Ed.) 1206; 24 Am. & Eng. Enc. Law, 256, 253. Courts of equity do not grant relief where it would injure an innocent party. 3 Pomeroy. Eq. § 1414; 31 Ark. 203; Brandt, Sur. & Guar. (2d Ed.) 263. Responsibility in a replevin suit cannot be avoided by wrongfully transferring possession of property. 34 Ark. 93. The doctrine of subrogation has its origin in a sense of natural justice. 34 Am. Rep. 286; 11 Ves. 12; 2 Vern. 208; 1 Story, Eq. Jur. § 499. The chancellor's finding will not be disturbed unless it is against the clear preponderance of the evidence. 44 Ark. 216; 42 Ark. 246; 49 Ark. 465.

In the absence of special findings, the presumption is indulged that the decision of the lower court was correct until the contrary appears. 33 Ark. 828; 42 Ark. 310; 52 Ark. 75. The record must show that the same matter might have come in question on a former trial, and this may be shown by extrinsic proof. 2 Black, Judg. § 624. The exemption of personal property is in cases of debt by contract only. 33 Ark. 688; Const. art. 9, § 1. A defendant cannot claim exemptions against an execution on a judgment in replevin. 36 Ark. 297; 45 Ark. 17. The adjustment of the rights of these parties is a matter of equitable cognizance, and independent of and in addition to the right of setoff given by the statute. 28 Am. Dec. 495; 22 Am. & Eng. Enc. Law, 456; Waterman, Setoff, §§ 431, 441, 298, 400.

WOOD, J., (after stating the facts.)  The doctrine of subrogation has no application here. The staves involved in the replevin suit had been purchased by Blanks from the French Oak Stave Co. He had taken possession of same, through his employees, the defendants in that suit. It was Blank's title and right to possession that was determined in that suit, for, confessedly, the defendants had no title and possession of their own. Upon the execution of the bond in replevin, Blanks retained the possession of the staves, and converted them to his own use, making it impossible for any of the defendants in the suit in replevin to satisfy the judgment for a return of the staves. By so doing he chose rather to pay off the Newton judgment than to return the staves. But his plea was that it was necessary for him to do this in order to protect his interest in the staves and the interest of his immediate vendor, the French Oak Stave Co. Very well, then, if he has any rights of subrogation at all, it must be the right of the French Oak Stave Co. against Matthews. But the French Oak Stave Co. was not a party to the suit in replevin. Its rights against Matthews for a failure of title in the staves was not and could not have been determined in that suit. Now, the proof in this case tends strongly to show that at the time the judgment in replevin was rendered, and at the time Blanks acquired his interest in same, the French Oak Stave Co. was indebted to

Matthews in a large sum for staves, including the staves in controversy in the replevin suit. So that, in any suit that may have been brought against him by his immediate vendee, the French Oak Stave Co., for a breach of his warranty of title to the staves replevied by Newton, he might have shown that the French Oak Co. was indebted to him in an equal or greater amount than any sum that might have been claimed by the French Oak Stave Co. against him for the failure of title to these particular staves. The principle announced in *Boyd* v. *Whitfield*, 19 Ark. 447, that a purchaser who loses a chattel by the interposition of one who has a paramount title must look for redress to his immediate vendor, applies here. Blanks acquired only the rights of the French Oak Stave Co. in the staves. He had no right by this proceeding to shut off any defenses which Matthews had against his immediate vendee, to whom alone he was responsible for a breach of warranty.

This ends the case, and renders it unnecessary to discuss other interesting questions raised by counsel.

Reversed and remanded, with directions to dissolve the injunction, and to dismiss the complaint for want of equity.