# CHARLESTON.

Plumley v. First National Bank of Hinton *et als.*

Submitted September 7, 1915.   Decided September 21, 1915.

1. Subrogation—*Equitable Defense—Rights of Indorsers of Notes.*

> To a bill by a subsequent endorser on a negotiable note, who has paid a judgment recovered on it, to compel a prior endorser to reimburse him and to obtain subrogation to the lien of the judgment, a cross-bill setting up a joint endorsement by agreement, as the basis of denial of liability for more than half of the debt, and also liability of the plaintiff to the defendant for one-half of another note alleged to have been jointly endorsed by them and paid by the defendant, and praying adjustment of the equities so shown and a decree for reimbursement to the extent of the amount paid by the defendant, in excess of one-half of the aggregate of the two notes, is proper.   (p. 636).

2.  EQUITY—*Cross-Bill.*

    The relation of the subject matter of a cross-bill to that of the original bill is tested, not by the allegations of the latter, but by its subject matter. If the two subjects are the same in general character, the matter of the cross-bill is germane. (p. 638).

3.  BILLS AND NOTES—*Accommodation Indorsers—Rights and Liabilities.*

    Accommodation endorsers are *prima facie* liable to one another in the inverse order of the endorsements, but, if they endorse under an agreement to be equally liable, in case of default on the part of the maker, they are treated as his sureties in the adjustment of ultimate rights and liabilities among themselves. (p. 638).

4.  SAME—*Evidence—Accommodation Indorsers—Rights and Liabilities —Agreement.*

    Such an agreement need not be in writing nor formal. It may be inferred from facts, circumstances and conduct attending the transaction and shown by parol evidence. (p. 639).

5.  PAYMENT—*Bills and Notes—Acceptance of New Note.*

    Acceptance of a new note from one of the parties liable on one which has been dishonored and protested, under an express understanding and agreement that it is given in satisfaction of the debt, amounts to payment of the original note. (p. 639).

Appeal from Circuit Court, Kanawha County. ·

Suit by W. M. Plumley, Jr., against the First National Bank of Hinton and others. C. C. Lewis, Jr., filed a cross-bill. From the decree, plaintiff appeals.

*Modified and affirmed.*

*R. Kemp Morton* and *R. F. Dunlap,* for appellant.

*Payne, Minor & Bouchelle,* for appellee.

POFFENBARGER, JUDGE:

Whether a set-off to a claim asserted by way of subrogation, in a bill in equity, is proper matter for a cross-bill, or, which is substantially the same thing, an answer in the nature of a cross-bill, is one of the principal questions raised by this appeal.

By his bill Wm. Plumley Jr. claimed a right of recovery, from C. C. Lewis, Jr., of the amount he was compelled to pay to satisfy a judgment taken upon a note for $3000.00, made by W. R. Miller to G. M. Griffith, endorsed by Griffith, the

George M. Griffith Company, a corporation, C. C. Lewis Jr. and Wm. Plumley Jr., in the order in which they are here named, and discounted by the First National Bank of Hinton, and subrogation to the benefit of the lien of said judgment on the real estate of Lewis; Plumley, being the last endorser, and *prima facie* entitled to look to Lewis for payment of the note.

In his cross-bill, Lewis claimed the endorsements were, by agreement of the parties, joint and not several, and all of the others being insolvent, that Plumley was equally liable with him for one-half of the note, wherefore he was entitled to reimbursement only to the extent of the other half thereof. As the basis of his prayer for affirmative relief, he set up a claim of right to contribution from Plumley, to the extent of one-half a note for the sum of $5000.00 on which he alleges he and Plumley and other parties, who are now insolvent, were, by mutual agreement joint endorsers and which he has paid. He further alleges, as matter of connection and integration of the two transactions, that all of the individual parties to the two notes were stockholders of the George M. Griffith Company, owning all of its capital stock, and had, by means of said notes, raised money for its corporate purposes and that the money obtained on them had been used for such purposes.

To determine whether the new matter set up by the cross-bill is foreign to the subject matter of the original bill, it is necessary first to ascertain the nature and scope of the cause of action asserted by the latter. It asserts a money demand against the defendant which, standing alone, is cognizable in a legal forum, and seeks a lien by subrogation, to secure it, and enforcement thereof, the latter two objects being of equitable cognizance. As there is neither a judgment nor a decree in favor of Plumley, his money demand is a simple debt, subject to the defenses of payment and set-off. The lien of the judgment on the $3000.00 note was one in favor of the bank, not Plumley. He can obtain the benefit of it only by allegation and proof of payment of the judgment, under circumstances rendering it equitable to permit him to have the benefit of that lien. Between him and the defendant, that issue is an open one, dependent upon the relation subsisting

between them. Any fact rendering it inequitable to allow him to have the benefit of the lien suffices to defeat his claim, and, if the defendant, on a fair settlement owes him nothing it would be unjust to do so. In paying the judgment, he became a simple contract creditor of the defendant, with right to go into equity to obtain the benefit of the lien, and it is manifestly equitable and just to allow the defendant the benefit of any set-off to which he may be entitled. Though not many authorities specifically so hold, all of them assert the principle. *Lewis* v. *Lewis*, 92 Ill. 237; *Mathews* v. *Blank*, 68 Ark. 497; *Barney* v. *Grover*, 28 Vt. 391; *Coate's Appeal*, 7 W. & S. (Pa.) 99; *Houston's Appeal*, 69 Pa. St. 485. They are so interpreted in *Fulton* v. *Harrington and Dunn*, 7 Houst. (Del.) 182.

The most vital part of the cause of action set up in the bill being a money demand, a cross-bill asserting right to a set-off and praying a decree for a balance claimed is clearly germane to the bill. Surely a court of equity may go as far as a court of law, in the administration of full and complete justice between parties to a cause of equitable cognizance. The limitation upon the right to file a cross-bill, founded upon the nature of the cross-claim, requiring it to be germane, does not limit the relief obtainable upon it to the allegations of the original bill. For the purposes of the test of kinship, the subject matter of the bill, not its mere allegations, determines its scope. Under a limitation so broad as the one asserted by the appellant, there could be no admissible new matter for a cross-bill. Equity but follows the law in admitting the defense of set-off to a demand properly asserted in a court of equity, and the prayer for subrogation confers equity jurisdiction. Having jurisdiction for one purpose, equity will do complete justice between the parties.

Though the evidence on the issue as to whether the money procured on the notes was used for corporate purposes is slightly conflicting, it sustains the court's affirmative finding. There is not sufficient evidence to the contrary to warrant disturbance thereof. As to the character of the endorsements, whether several or joint, the trial court's finding stands in the same situation. All of the individual endorsers were stockholders and indirectly beneficiaries of the loans. Though

Plumley was not an original subscriber to the stock, and, for some time prior to the endorsements, held his shares only conditionally, it is fairly clear that he was a stockholder, when the notes were endorsed by him. His motive in taking the stock is immaterial. This circumstance aids the testimony of Lewis and Griffith, tending strongly to prove agreements to endorse jointly. Lewis swears he would not endorse, unless the others would. Griffith says he so advised all the others before they endorsed. Garnett, then cashier of the bank, says Plumley endorsed the $3000.00 note, as a volunteer, on the refusal of the bank to take it, in the condition in which it was presented, but this is inconsistent with the testimony of Griffith, showing Plumley had agreed to endorse it, with knowledge of Lewis' refusal to go on it, without him.

That the agreements for joint endorsements were not formal, or, in so many words, is immaterial. They could be inferred from the facts and circumstances found by the court. *Rey* v. *Simpson,* 22 How. (U. S.) 341, 349; *Pitkin* v. *Flanagan,* 23 Vt. 160; *Flint* v. *Day,* 9 Vt. 343. From facts similar in character, but less potent, the jury found such an agreement, in *Hagerthy* v. *Phillips,* 83 Me. 336, and the court refused to set the verdict aside.

The Kanawha National Bank which discounted the $5000.00 note has not as yet received in cash the full amount thereof. Lewis has paid $2800.00 in money on account of it and given the bank his individual note for the remaining $2200.00. After maturity, default and protest, the note was handed to the bank's attorney who later made some arrangement with Lewis which his client accepted. The cashier, says the attorney kept it possibly for several weeks "and came back and said, he had made arrangements with Mr. Lewis to take his note in lieu thereof, which we accepted, and my recollection is that this note (the old one) was to be left as collateral until the note was paid." He also says he later found it in the bank's files, upon an inquiry for it by Lewis, and loaned it to him. Lewis swears positively he has paid the note, without stating the manner of payment, and has produced and filed it. The cashier's testimony as to the disposition of the old note, saying it is his recollection that it "was to be left as collateral," not that it was in fact so left falls short of a

positive statement. Its presence in the files at a later date is a circumstance tending to show it was, but only by inference. Nor does he say application for a loan of it was made. He was applied to for information as to whether he had it. Finding it in the files, he says he loaned it, for a purpose unknown to him. He does not say specifically that Lewis accepted or received it as a loan. This evidence falls short of an express agreement upon the terms or character of the delivery. Lewis may have intended to demand it as his own property. Such inferences as arise against him are met and rebutted by his possession of the note and his positive declaration of payment. His own note expressly given and accepted as payment would amount to it in law. *Thompson* v. *Percival,* 5 B. & A. 934; 5 Rob. Pr.; *Mason* v. *Wickersham,* 4 W. & S. (Pa.) 100; *Oliphant* v. *Church et al.,* 7 Harris (Pa.) 318; *Feamster* v. *Withrow,* 12 W. Va. 611, 648. Nothing is perceived in this state of the evidence, warranting disturbance of the finding of payment.

An error in the decree as to the amount thereof renders a correction necessary. The amount paid by Plumley, with its interest to the date of the decree, was $3830.36. The court erroneously fixed it at $3453.55 and the calculation made on that basis allows Lewis too much money, as for overpayment. It should be $2007.32 instead of $2185.73. The decree will be so modified as to correct this error and, as so modified, it will be affirmed, with costs to the appellee. If this matter had been brought to the attention of the court below, the correct amount would have been inserted in the decree. And likely the error could have been corrected in the lower court, by motion, as a clerical one.

*Modified and affirmed.*