L. C. HOLSTON ET ALS. *vs.* CHARLES J. HALEY.

ERFORD EMMONS ET ALS. *vs.* F. L. DURGIN ET AL.

York.    Opinion November 30, 1926.

*Under the common law and the Uniform Negotiable Instrument Act of this State, indorsers are prima facie liable in the order in which their names appear on the instrument, but evidence is admissible to show that, as between themselves, they have agreed otherwise.*

*It is not necessary that an express agreement for a joint liability be proven.   An implied agreement may satisfactorily appear from the circumstances under which and the purposes for which the notes were given and from the acts of the parties.*

Where, as in the instant case, in order to raise capital for a joint undertaking, the officers of a corporation who are mutually benefited indorse the notes of a corporation, though without any conference between them as to their respective liability, but by their acts an understanding may be fairly inferred that their liability was joint and not successive, a finding by a Justice below that their liability was joint will not be disturbed.

On appeal.    Bills in equity, two cases heard together, to determine the liability of certain officers of a corporation as indorsers on a corporation note;  as to whether their liability was joint or successive. Upon a hearing on bill, answer, replication and proofs, the sitting

Justice found for the plaintiffs, sustaining the contention that the liability of the indorsers was joint and not successive and that defendants should contribute to plaintiffs.   From which finding defendants appealed.   Appeal dismissed with additional costs.   Decree below affirmed.

The case is sufficiently stated in the opinion.

*Elias Smith,* for plaintiffs.

*Cram & Lawrence,* for defendants.

SITTING:   WILSON, C. J., DEASY, STURGIS, BASSETT, JJ., MORRILL, A. R. J.

WILSON, C. J.   The two cases above entitled were heard together, and as they involve the same question, may be considered and decided together.

In April, 1918, certain residents of the towns of Cornish and Hiram, twenty or more in number, and farmers by occupation, organized a corporation under the name of the Cornish Farmers Union for the purpose of handling and disposing of their produce, operating creameries, selling fertilizer, flour, grain, groceries, and other articles of merchandise.   From the name, purposes, and the evidence, it is obvious that the corporation was organized for the mutual benefit of its members and of such other farmers in the same or adjoining communities as might afterwards become associated or deal therewith.

Only a nominal sum was paid in by the incorporators, the par value of the shares being ten dollars, the capital for doing business being chiefly obtained upon notes of the corporation indorsed by its directors.

On May 11th, 1917, according to the records of the corporation, the directors indorsed a note for $1800, and on May 29th another note for $500 to buy grain or other merchandise.   Later other notes were issued from time to time by the corporation, indorsed by five or more of the directors, who were seven in number.   On one or more of these notes were all of the plaintiffs, except A. F. Clark.   These notes were all discounted at the Limerick National Bank, and on January 1st, 1920, totaled in the principal amount $6900.   On January 1st, 1920, a single note in renewal of these several notes for the sum of $6900 was executed by the corporation and indorsed by the entire board of directors, which then consisted of the five plaintiffs

in the second action and the two defendants. The evidence shows that the Bank relied entirely upon the indorsers and not upon the maker.

On March 17, 1920, a prior note of the corporation for $2020, which bore the indorsement of J. S. Weeks, C. J. Haley, Erford Emmons, L. C. Holston, and A. F. Clark, was reduced to $2,000, and a new note for the latter sum was issued, indorsed by its then directors, A. F. Clark, J. S. Weeks, Erford Emmons, L. C. Holston, F. L. Durgin, H. B. Wadsworth, and Charles J. Haley, which note, together with the note for $6900, forms the basis of the second action.

On September 22, 1920, a note for $2500 was discounted at the Bank indorsed by five of the directors, viz.: Clark, Pike, Wadsworth, Weeks, and Haley. On January 1st, 1922, Mr. Pike having apparently, as the testimony indicated, paid his respective share of the twenty-five hundred dollars; viz., five hundred dollars, the obligation was renewed for the amount of $2,000 by a note bearing that date and indorsed by five of the directors, including the plaintiffs in the first action: Holston, Clark, Wadsworth, and Berry; and the defendant, Haley.

The new enterprise appears to have been profitable until 1921, when severe losses were suffered, in part, from a sudden drop in the price of grain after its manager had ordered a large amount, which losses also continued into 1922, and in 1923 action was taken by the stockholders to dissolve the corporation and wind up the business.

The Limerick Bank then called upon the indorsers for payment of the notes held by it. The plaintiffs met and each agreed to pay his respective share on the basis of a joint liability on or before July 1st, 1923. Though he did not attend the meeting, the defendant Durgin, also, and with the knowledge of the defendant Haley, according to the testimony of the cashier of the bank, sometime in June sent to the bank $500 on his obligation, and with the instruction to the cashier to hold it until the full amount was paid in. The plaintiffs, as the other indorsers, jointly paid the balance due on the notes, and bring these two bills in equity for contribution: the first, against Mr. Haley as one of the indorsers on the note given January 1st, 1922 for $2000, and the second against both Durgin and Haley on the note for $6900, given January 1st, 1920, and the note for $2,000, given March 17, 1920. The plaintiffs based their claim for contribution on the ground that the defendants' obligation as indorsers, under the

circumstances, was joint; and the defendants contending that there was no agreement to that effect, and that, under Section 68 of the Uniform Negotiable Instrument Act of this State, Chapter 257, Public Laws 1917, they are only liable in the order in which the names appeared on the notes.

Section 68 of the Act apparently did not change the common law liability of indorsers in this state, they being "liable *prima facie* in the order in which they indorse, but evidence is admissible to show that as between or among themselves, they have agreed otherwise." *Smith* v. *Morrill*, 54 Maine, 48; *Coolidge* v. *Wiggin*, 62 Maine, 568; *Hagerthy* v. *Phillips*, 83 Maine, 336.

On a note alone, this section would be conclusive, unless, of course, it is otherwise indicated on the note itself; but evidence, parol or otherwise, may be admitted to overcome this presumption. Nor is it necessary that an express agreement to the contrary be shown. An implied agreement of a joint liability may satisfactorily appear from the circumstances under which and the purposes for which the note was given and from the acts of the parties. *Hagerthy* v. *Phillips*, supra, *Coolidge* v. *Wiggin*, supra; *Weeks* v. *Parsons*, 176 Mass., 570, 575; *Trego* v. *Estate of Cunningham*, 267 Ill., 367, 378; *Plumley* v. *Bank of Hinton*, 76 W. Va., 635, 639. *Talcott* v. *Coggswell*, 3 Day (Conn.), 512. *McDonald* v. *Whitefield*, L. R., 8 App. Cases, 733.

The judge below, upon the evidence, found there was such an understanding or agreement for a joint liability on the part of the indorsers of these notes, and held that each of these defendants was bound to contribute his respective share and liable for that amount to the other indorsers paying the full sum. His finding of fact having the effect of a jury verdict, to sustain the appeal, must be shown to be clearly wrong.

The undertaking for the furtherance of which these notes were issued was clearly designed for the mutual benefit of its members. It had no capital of any substantial amount contributed by its stockholders. Its directors proceeded to raise the necessary capital to begin business by discounting notes of the corporation at a bank, and on the strength of the indorsement of a majority or all of its directors. The benefits derived from the notes was presumably mutual between all the stockholders, including the directors. While the evidence does not show that the respective obligations of the

indorsers was ever discussed prior to the indorsements, it was evidently understood by all the other indorsers, if not by these defendants, to be joint. In one instance a director paid his respective share rather than indorse a renewal note, and one of these defendants contributed to the joint fund for the taking up of these notes without insisting upon a successive liability.

The order of indorsement of the renewal notes was never the same as on the originals. The evidence discloses that the directors indorsed, without regard to the order of their indorsement, as they happened into the store, or as the officer who had the note happened to meet them. While a different order of indorsement on renewal notes may not alone be sufficient to overcome the presumption of several and successive liability; *Enterprise Brewing Co.* v. *Canning,* 210 Mass., 285; yet when taken with other circumstances, viz.: a joint undertaking or interest, and an understanding by all the other indorsers than the one denying joint liability, that the liability was joint, and a payment upon that basis, it is not only consistent with joint liability, but is, under such circumstances, of no little significance.

In states when the rule as to successive indorsers was the same as ours and which now have the Uniform Negotiable Instrument Act, it has been held, that, where the officers of a corporation for the furtherance of a joint undertaking in which they were mutually interested, have indorsed a note for the corporation to obtain the necessary funds to carry on the corporate enterprise, it was sufficient without an express understanding or agreement between the indorsers, each with all the others, to sustain a finding that there was at least, an implied agreement that the obligation thereby assumed was joint and not successive.

In *George* v. *Bacon,* 123 N. Y. S., 103, where several parties indorsed a corporate note for their mutual advantage, but without any express agreement or understanding as to their respective liability, the court said: "The significant circumstances in the present case are that all the indorsers were engaged in a common enterprise; that the money was to be raised on the note in furtherance of that enterprise, and, so far as it appears, one indorser was as much interested in the enterprise and as much benefitted by the money as was any other. It is likewise a very significant circumstance as bearing upon the mutual obligation of the indorsers to each other, that all indorsements were put on the

note before it was issued, and solely to give it credit with the bank; and that no indorser gained any profit except such as was shared in by all in pursuance of the common enterprise."

To the same effect is *Strasberger* v. *Myer Strasberger Co.*, 152 N. Y. S., 758, where it is held that such a mutual benefit presumably arising from a corporate enterprise in which all the indorsers were interested was sufficient to raise a question of fact as to whether it was the intent of the parties to become jointly liable. Also see *Middleton* v. *McCarter*, 13 D. C., 420; *Lee* v. *Boykin*, 11 A. L. R., 1328, 1331, Anno., 1332.

While there may be some elements in each of the cases cited not present in the cases at bar, the general principle is found in them all that when the indorsers are engaged in a common enterprise and their indorsements are for the sole purpose of furthering that enterprise in which each one's interest is equal with that of each of the others, it may be sufficient, without any express understanding, on which to base a finding by a court or jury that the indorsements were joint and not successive. Under such circumstances, payment by any indorser on account of such joint liability, unless explained, as it was not in this case, is surely sufficient to warrant such a conclusion. *Talcott* v. *Coggswell*, supra.

The fact that the notes on which these actions are based were renewal notes does not militate against the plaintiffs' contention; since the benefits accruing from the original notes were also shared in by the indorsers of the renewals, as all were for the promotion of the same enterprise in which all were interested at the time of the issuing of the original notes, or became interested shortly afterward as stockholders and sometime before the renewal notes were signed. The case of *Hunt* v. *Chambliss*, 15 Miss., 532 cited by defendants on this point is not *contra*. There the indorser prior to the renewal had no interest in the enterprise or purpose for which the note was given, and further, the court in that case in closing says: "This position rests upon principles of equity, even if it were not still more substantially supported by the evidence respecting the actual and special contrast of the appellee, which clearly was to become liable in the event the others did not pay, but not to become jointly liable with them." In other words, not only the circumstances in that case, but the evidence, showed that the new indorser on the renewal note was not a joint, but a successive indorser.

From the evidence in the cases at bar, it cannot be said that the findings of the Justice below were clearly wrong.  The entry in each case will be:

> *Appeal dismissed with*
> *additional costs.*
> *Decree below affirmed.*